Commonwealth *v.* Moehring, Appellant.

Argued November 10, 1969. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Emanuel Goldberg,* for appellant.

*Robert L. Campbell* and *Carol Mary Los,* Assistant District Attorneys, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION PER CURIAM, March 12, 1970:

Judgment of sentence affirmed, and the defendant is directed to appear in the court below at such time as she may be there called, and that she be by that court committed until she has complied with the sentence, or any part thereof which had not been performed at the time the appeal was made a supersedeas.

---

CONCURRING OPINION BY MONTGOMERY, J.:

### Statute of Limitations

The first question raised by appellant in this appeal from her sentence on the charge of subornation of perjury is whether the statute of limitations barring such prosecution is five years or two years. The Act of March 31, 1860, P. L. 427, as amended, 19 P.S. §211, places perjury within the five-year limitation but fails specifically to state the limitation for subornation of perjury. Appellant argues, therefore, that she comes under the two-year limitation applicable to all crimes not specifically covered by the Act. I do not accept this argument. The crimes of perjury and subornation of perjury are both defined in the same section of The Penal Code of June 24, 1939, P. L. 872, §322, 18 P.S. §4322, which provides the same penalty for both crimes. Furthermore, the two crimes consist of the same elements, with subornation of perjury having the additional element that the defendant induced, persuaded, and instigated the suborned victim to commit per-

jury. *Commonwealth v. Billingsley*, 160 Pa. Superior Ct. 140, 50 A. 2d 703 (1947), affirmed, 357 Pa. 378, 54 A. 2d 705 (1947). Also, we have held that the perjurer and the suborner are accomplices in the crime of perjury. *Commonwealth v. Leitch*, 185 Pa. Superior Ct. 261, 137 A. 2d 909 (1958). In the light of these cases, it is clear to me that where the Legislature placed the crime of perjury within the five-year limitation, it included subornation of perjury as well, without specifically naming it. Such was the conclusion reached by the lower court in *Commonwealth v. Dengler*, 2 Chest. 499, 2 Del. 375, 2 Lanc. 314 (1885).

## Criminal Procedure

Appellant next complains that Rule 126 of the Rules of Criminal Procedure has been violated in the particular that the lower court permitted an amendment of the transcript returned by the committing magistrate without an application therefor being *filed*. I find no merit in this argument. The facts are that the magistrate had one criminal complaint against appellant before him containing separate charges of suborning both Robert G. Johnston, and his wife, Jo Evelyn Johnston, to commit perjury. The appellant had the complete complaint read to her at the preliminary arraignment and waived a hearing thereon. However, in returning the transcript of his docket, the magistrate inadvertently omitted to attach that part of the complaint relating to Robert G. Johnston. On October 21, 1966, the District Attorney asked special leave of the court for permission to present to the October Grand Jury then in session indictments against Robert G. Johnston and Jo Evelyn Johnston, charging perjury, and another indictment against the appellant for subornation of perjury. This application was made to prevent the charges from being barred by the Statute of Limitations, which

would have become effective on October 25, 1966. It was at this time that it was discovered that the transcript involving appellant did not include Robert G. Johnston as one of those suborned, and for that reason the amendment, about which complaint is now made, was requested. The application for this amendment was made in the forenoon of October 21, 1966, in the presence of appellant's counsel, but was not allowed by the court until a hearing had been held that afternoon, at which the justice of the peace, whose transcript was being questioned, testified that the original complaint, filed with him by County Detective Nicholas A. Schifino, had charged appellant with suborning both Mr. and Mrs. Johnston. In view of this procedure, appellant, nevertheless, first argues that the amendment was improperly allowed because no written application was filed in accordance with Rule 126 of the Rules of Criminal Procedure. The rule does not provide for a written application unless we are constrained to infer that meaning from the use of the word "filed." However, I conclude that the rule has been complied with substantially since the application for the amendment was made a part of the transcript of the testimony taken at the hearing, of which appellant had due and timely notice, and at which she was present with counsel and participated.

Appellant contends further that the amendment was improperly allowed because it added an additional charge. I do not agree. The court properly corrected the transcript to perfect the record to conform to the facts of the case, as provided by Rule 126, and added no charge to the transcript that did not constitute part of the original complaint.

Appellant next complains that she was denied a reasonable opportunity to challenge the Grand Jury under Rule 203 of the Rules of Criminal Procedure. The facts disprove this contention. On October 7, 1966,

appellant was arraigned before the arresting magistrate, where she waived a hearing. On October 10, 1966, the transcript of that magistrate's record was returned by him. On October 19, 1966, notice was sent to appellant that on October 21, 1966, an application would be made to the court for permission to present the indictment to the October Grand Jury, which notice was received by appellant on October 20, and by her attorney on the same day. The application was allowed by the court after the hearing on the 21st, and the indictment was submitted to the Grand Jury, which returned it on October 24, 1966. Although a defendant has the right under Rule 203 to challenge the array of the Grand Jury before a bill of indictment is submitted to it and must be given a reasonable opportunity to make such challenge, I conclude that the time between October 21, 1966, and October 24, 1966, presented appellant with such opportunity, which she did not accept. In *Commonwealth v. Dessus,* 423 Pa. 177, 224 A. 2d 188 (1966), relied on by appellant, such reasonable opportunity did not exist. In that case the time element was only a few hours. I find no violation of appellant's legal or constitutional rights under the circumstances.

I see no merit in appellant's argument that she was denied the right to waive grand jury action under Rule of Criminal Procedure 215. The record discloses nothing to indicate a desire on the part of appellant to waive such notice. Therefore, since she entered a plea to the indictment as returned by the Grand Jury and proceeded to trial, she must be considered as having waived that right, with no apparent prejudice to her.

## Evidence

Appellant challenges the sufficiency of the evidence to sustain a conviction of subornation of perjury. Her

conviction is based primarily on the testimony of Robert G. Johnston, the subornee, who testified in behalf of the Commonwealth, although appellant was also indicted and tried for suborning Robert G. Johnston's wife, Jo Evelyn Johnston. However, at the end of the testimony, the trial court sustained a motion for a directed verdict of acquittal for defendant as to the charge relating to Mrs. Johnston.

The subornee, Johnston, testified that, in 1960, at the request of appellant, he and his wife, in appellant's presence, signed as witnesses, the will of Charles Sterns Lanning, who was not present at that time. He further testified that, on October 25, 1961, at a wills contest held before the Honorable HUGH C. BOYLE, President Judge of the Orphans' Court of Allegheny County, Pennsylvania, in the Estate of Charles Sterns Lanning, who died on August 26, 1960, he falsely testified that, at the request of Charles Sterns Lanning, he had witnessed the September 4, 1954, will, in the presence of Lanning and Jo Evelyn Johnston. Appellant contends that the above testimony of Johnston is insufficient to prove that a perjury has been committed because it violates the two-witness rule, which is still applicable in Pennsylvania. *Commonwealth v. Russo,* 388 Pa. 462, 131 A. 2d 83 (1957). However, appellant apparently has overlooked *Commonwealth v. Leitch,* supra, which held that where the perjurer admits his guilt, the reason for the two-witness rule ceases to exist. Thus, where the perjurer, himself, testifies in the case to the fact of perjury, there is no such requirement.

The record discloses that prior to appellant's indictment, which was handed down on October 24, 1966, the subornee had recanted his false testimony given at the will contest hearing. At the hearing at which Johnston committed perjury, Judge BOYLE sustained the probate of the September 4, 1954, will. On appeal, the Supreme Court of Pennsylvania remanded the case for

further testimony. At the resulting second hearing, which was held on June 29 and 30, 1964, Johnston admitted that he had lied under oath at the first hearing before Judge BOYLE. Thereafter, Judge BOYLE set aside the 1954 will, from which action no appeal was taken. On the basis of these facts, appellant argues that the recantation of Johnston before final disposition of the case in which he offered perjured testimony relieves Johnston of the charge of perjury and thus the subornation of perjury based thereon must fail since the suborner and subornee are accomplices in the perjury. It is to be noted that the one Pennsylvania case relied on by appellant, *Commonwealth v. Irvine,* 14 Pa. D. & C. 275 (1930), held that the recantation, in order to be recognized, must occur before the termination of the proceedings in which the false statements are given. In the present case, Judge BOYLE had ruled and an appeal was taken to the Supreme Court and the case was returned to the court below before Johnston recanted. However, I have found no other Pennsylvania cases which support appellant's argument and I personally believe that the crime of perjury is committed when the false oath is given and, since the hearing in which the perjury was committed had terminated, I concur in the majority's affirmance of the conviction under the facts of this case on this point.

Appellant finally charges, on the sufficiency of the evidence, that Johnston's testimony fails to establish the essential element that both he, as the witness, and Mrs. Moehring, the accused, knew that Mrs. Johnston's testimony was false. She cites the applicable rule from *Commonwealth v. Billingsley,* supra, page 145, A. 2d 705, as follows: "It is, of course, a necessary element of the crime that both the accused and the person to be suborned knew that the testimony sought was false, material, and to be used in actual or prospective litigation." However, I believe that that element was sup-

plied by the following testimony taken from the direct examination of Johnston: "Q. Mr. Johnston, when you gave that testimony on October 25th of 1961, was it true? A. No, sir. I lied about the whole thing. . . . Q. Whose idea was it that you lie at this hearing? A. Mrs. Moehring took me to the attorney's office. Q. Was anything said to you prior to your testimony there on October 25, 1961, by Mrs. Moehring? . . . Q. No, I'm talking about the hearing at Judge Boyle's Chambers, when you were under oath? A. Just in Attorney Matson's Office. Q. What did Mrs. Moehring say to you? A. I was to follow my wife's testimony and just substantiate whatever she said. Q. Did you know at this time what your wife was going to say? A. Yes, I did. Q. Had this been gone-over in the attorney's office? A. Yes, it had. Q. Did you know at that time that this was not true? A. Yes, I did." From the above testimony, it is my opinion that the jury could have found beyond a reasonable doubt that Mrs. Moehring knew what Mrs. Johnston's testimony would be, that it would be false, and that thereby Mr. Johnston's testimony likewise would be false.

## Fair Trial

It is noted that on December 18, 1966, eleven days after appellant's conviction, on motion of the District Attorney, the indictment of Robert G. Johnston for perjury was nolle prossed. Appellant argues that she was deprived of a fair trial under the Due Process Clause of the Fourteenth Amendment for the reason that the Commonwealth did not reveal to the jury an intention to drop the charges against Johnston as a reward for his testifying in her trial. I cannot accept such an argument. The record of the trial shows that, without objection, Johnston admitted that he was under indictment for perjury and (on cross-examination)

he denied that he had been offered immunity from prosecution for perjury by the District Attorney. I believe that such evidence satisfies the rule cited by appellant, as set forth in *Commonwealth v. Mulroy*, 154 Pa. Superior Ct. 410, 416, 36 A. 2d 337, 340 (1944): "So, too, if the witness, thus under indictment, testifies for the Commonwealth, it may be that his testimony was biased because given under promise or expectation of immunity or leniency from the *officers conducting the prosecution being tried*: Alford v. United States, 282 U.S. 687, 693; 3 Wigmore on Evidence (3d Ed.) §949; and the jury are entitled to know it." Furthermore, appellant's counsel in argument to the jury could have and indeed may have speculated on the reasons for and motives of Johnston in testifying for the Commonwealth.

## Charge of the Court

Appellant has set forth a number of instances where she contends that the court committed fundamental error in its instructions to the jury, none of which were objected to at the time of trial.

I believe that by failing specifically to object to the court's charge, appellant waived an objection to (1) the court's failure to instruct the jury on the rule of *Commonwealth v. Mulroy*, supra, quoted above; (2) the failure of the court to limit the issue of appellant's alleged subornation to whether she suborned Johnston to testify falsely on October 25, 1961, and not to all of his false testimony admitted to by him on the stand; (3) the trial court's possible undue emphasis on certain aspects of the evidence, including the Lanning incompetency proceeding and the testimony of Robert G. Johnston; and (4) that the court may have erred in instructing the jury that the defense contention that

Robert Johnston was vindictive would be overcome by the fact that he was under indictment for perjury.

Finally, appellant contends that the trial court failed to instruct the jury on the proper definition of subornation of perjury, to the effect that the court should have told the jury that, as stated in *Commonwealth v. Billingsley,* supra, at page 145, A. 2d 705, "It is, of course, a necessary element of the crime that both the accused and the person to be suborned knew that the testimony sought was false, material, and to be used in actual or prospective litigation." From my reading of the court's charge, I find that the court instructed the jury on the definition of perjury, and stated further, "Then, to have Subornation of Perjury, we have all of those elements [of perjury, itself], plus one more—that the defendant, induced, persuaded, suborned, or instigated the witness to commit this crime of Perjury. So that's a simple definition of the crime." I believe that, thus, the court fully defined the crime for the jury and that it is implied within such definition that the suborner and subornee must know that the testimony is false, material, and to be used in actual or prospective litigation.

For the above reasons, I respectfully concur in the affirmance by the majority of appellant's conviction.

SPAULDING, J., joins in this concurring opinion.