## Commonwealth *v.* William Bell, Appellant.

.166 405
174 258

166     405
19 SC ³ 96

166     405
e 29 SC ¹362

166     405
32 SC ²245

166     405
f218    ² 10

.166 405
.39SC 405
f40SC¹125

*Criminal law—Incestuous fornication—Evidence—Statute of limitations.*

On the trial of an indictment for incestuous fornication it is competent for the commonwealth to introduce evidence of prior illicit relations between the parties although such evidence discloses other indictable offences of like nature which are barred by the statute of limitations.

In such a case evidence that the prisoner forbade his daughter to go to church or to have social intercourse with the young people of the neighborhood, is admissible where it appears that the motive of his action was either to have greater freedom for sexual intercourse with her, or to punish her for not yielding to every one of his demands. In either case it was an act in furtherance of his incestuous purpose.

The daughter was asked under objection and exception if she had told her brothers and sisters of the offence about the time of its occurrence. She answered that she did not then but did about four or six months afterwards. Being about to tell what she said the court instructed her not to state it. No motion was made by the prisoner's counsel to strike out her answer, or so much as was not responsive to the question put to her. *Held,* the prisoner was not prejudiced, and that judgment on a verdict of guilty would not be reversed.

In a criminal case where the evidence offered is part of the commonwealth's case in chief, the admission of it in rebuttal is not assignable in error.

Argued Oct. 8, 1894. Appeal No. 286, Oct. T., 1894, by defendant, from judgment of Q. S. Armstrong Co., Dec. T., 1893, No. 41, on verdict of guilty. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

This was an indictment for incestuous fornication. Before RAYBURN, P. J.

At the trial the prosecution made the following offer:

Mr. McCain: The commonwealth offers to prove by this witness: "That she is the daughter of William Bell, the defendant, and that as such he had illicit intercourse with her within two years last past, and that on frequent other occasions prior to that time he has had illicit intercourse, and has made improper solicitations, and has had carnal connection, and showing the relationship which exists, we propose to show the declarations of the witness as to his solicitations; and further,

give her declarations as to his having had connection with her from time to time up until within the last year or fifteen months."

Mr. Leason: The counsel for the defendant objects to the witness testifying to any transaction, except those which have occurred within two years last past. The balance of the proposition is objected to as incompetent and irrelevant.

The Court: We will overrule the objection and admit the evidence, but we will confine the commonwealth to the producing of evidence going to show the commission of the offence charged within the statutory period. [1]

Mr. McCain: We would like to be heard on this matter before your honor makes a decision.

Mr. McCain: Laura, is your mother living? A. No, sir, she is not living. Q. When did she die? A. Why, she died when I was only nine years old, when she died. Q. Who composed the family—what other children were there? A. Why, four sisters and one brother, five with myself. Q. Were you the eldest? A. No, sir, I had a sister older than me. Q. Is she living? A. No, sir, she is dead. Q. Whereabouts did you live,—where was your home? A. My home was on the other side of Rural Village. Q. Cowanshannock township? A. Yes, sir. Q. Your father and yourself and four others were the family, is that it? A. Yes, sir. Q. What were your sisters' and brother's names? A. My eldest sister's name was Nannie, my name is Laura, my brother's name is Lee, he comes between us, and I have a sister Martha, Clara and Lizzie. Q. Laura, I wish you would state to the court and jury if you were in the habit of attending church or school? A. No, sir. Q. Will you state why you were not permitted to go to church or school?

Mr. Leason: We object as incompetent and irrelevant.

Mr. Snyder: It is for the purpose of showing the influence of the father exercised over his child.

Mr. Leason: It is perfectly irrelevant in this case.

The Court: We will overrule the objection and give you an exception and sealed bill. [2]

Mr. McCain: Now, Laura, will you state to the court and jury if your father refused to allow you to go to church and school?

Mr. Leason: We object to that question as leading.

The Court: It is somewhat leading.

Mr. McCain: Will you state to the court and jury what reason he gave, if any, why he would not permit you to go to church or school?

Mr. Leason: We object to that.

The Court: Ascertain first whether there was any reason given by her father.

Mr. McCain: Now, Laura, will you state to the court and jury if your father objected to your going to church or school, or social gatherings? A. Yes, sir, he did. Q. Now, did he give any reason for doing so? A. Yes, sir, he did.

Mr. Leason: We object.

Mr. McCain: Now, Laura, will you state to the court and jury what reasons, if any, he gave for not allowing you to go to church or school or any social gathering?

Mr. Leason: We object to this unless it occurred within two years.

The Court: We have overruled the objection and given you an exception as to that.

Mr. McCain: Just go on now and state what your father said in regard to not allowing you to go out? A. Why, because I would not stay at home and do as he wanted me to do. Q. What did he want you to do? A. Why, he wanted me——

The Court: We have allowed you to give in these circumstances but not any evidence of the commission of any offence prior to the statutory period.

Mr. McCain: We propose to show that his influence was that he would not permit her to go to church or any place without she would concede to his requests.

The Court: Proceed.

Mr. Leason: Let the counsel make a proposition of it.

The Court: We are only permitting them to show the circumstances under which these people lived and what control he had over his daughter.

Mr. Leason: Defendant's counsel object to the testimony of the witness testifying to any acts or conduct beyond two years from the date of the finding of the bill of indictment in this case, as incompetent and irrelevant.

The Court: We will overrule the objection, grant you an exception and sealed bill. [3]

Q. When you was in the family way with the second child

what, if anything, did he propose to you in order to get away with the child?

Mr. Leason: It seems to me this is taking a wider range than even the narrow bounds in which the court permitted it at all. The question is objected to as incompetent and irrelevant; and the act of fornication here would be a separate and distinct offence, separately and distinctly indictable.

The Court: We think that under the ruling that we have made that you could ask the question. We will overrule the objection and give you an exception and sealed bill. [4]

Mr. McCain: Laura, did you ever tell your brother and sisters of his conduct towards you?

Mr. Leason: We object to that. We ask the counsel to have a proposition on the record.

Mr. McCain: We propose to show by the witness on the stand that at the time or shortly after these connections were had by her father she communicated these facts to her brother and sisters, for the purpose of corroborating her statement to show that it is no fabrication, and is part of the *res gesta.*

Mr. Leason: Counsel for the defendant objects to the testimony; it does not propose to disclose any declarations had within the time limited by the statute of limitations, two years prior to the finding of the bill of indictment; second place, it is not that character of a case, she being an accomplice, in which her declaration can be given in evidence to sustain her testimony on the witness stand. Also as incompetent and irrelevant.

The Court: If the declarations proposed to be shown by the witness are declarations made by her at the time, or immediately after the time of the commission of the alleged offence in October, last fall a year, they will be permitted to be given; but any other than that will not. We will grant the defendant an exception and sealed bill. [5]

Mr. McCain: Will you state if, after your father had connection with you in October, that is the last time stated, did you tell your brother and sisters at or about that time, about it? A. No, sir, I did not just then but I did 5 or 6 months after that; I told my two sisters.

The Court: Do not state it then.

Mr. McCain: We propose to ask her if her father did not

say to her, " If anybody comes to ask you about this, you must say you were caught down in the woods," and afterwards suggested a name to her.

The Court: Proceed.

Mr. McCain: Just state now to the court and jury——

Mr. Leason: Make a proposition, what you propose to prove.

Mr. McCain: We propose to prove by the witness on the stand that her father, William Bell, the defendant, suggested to her while pregnant, and before the birth of her child, that if interrogated about it she must state to any one asking her, that she was caught in the woods by some man who had connection with her and she thereby became pregnant.

Mr. Leason: The offer is objected to as incompetent and irrelevant.

The Court: We will overrule the objection and give you an exception and sealed bill. [6]

Mr. McCain: The defendants having asked the witness on the stand in their cross-examination as to a conversation had with her grandmother in regard to William Hotham being the father of the second child, the witness not having an opportunity to explain, we now ask the witness to explain and give the conversation as it occurred.

Mr. Leason: It is incompetent and irrelevant to affect the guilt of the defendant, it not being alleged that he was present at the conversation or took any part therein.

The Court: We will overrule the objection and give you an exception and sealed bill. [6]

Mr. McCain: We propose to show by this witness the facts and circumstances corroborative of the testimony of the witness just preceded, Laura Bell, for the purpose of corroboration.

Mr. Leason: The witness preceding having testified to but a single offence within the statute of limitations, which is within two years from the day of the finding of the bill in this case, the defendant objects to the witness testifying to any act that occurred prior to that date.

The Court: We will overrule the objection and give you an exception and seal a bill. [7]

Q. Mr. Graden, I wish you would state to the court and jury, if you know whether or not Laura Bell, here, was per-

mitted to go out to any socials of any kind, or to church or school? A. She was out very little that I know of; I have seen her in my lifetime I believe two or three times at church at night. I am not out at night myself, but so far as I can understand she has not been out. Q. Do you attend this church that is near their place there? A. Yes, sir. Q. How often were you there, Mr. Graden? A. Well, I am there middling regular. Q. In the last nine or ten years how often have you seen Laura Bell there? A. Well, now, I don't think I ever saw her there more than twice or three times in my lifetime. It is the Reformed Church. Q. Did you ever know her to have any company at home—keep company with any young people? A. I did not. Q. Do you know whether or not she attended the common schools? A. I suppose she went to school a little; I can't tell you very much about the places; the children have been at my place very little since they was very small. Q. Do they go any place except remain at home? A. I have seen them go to the store in the daytime——

Mr. Leason : We object to this testimony as irrelevant.

Mr. McCain : Do you know whether the neighbors there, that is the young folks, the young men or girls, visit Laura at her home any? A. Not that I know of; I have a daughter, she is along 16 past, and I don't know whether she has been there; she might have been but not that I know of. [8]

Q. Just state to the court and jury what did transpire that morning in the cook-house that your father has given his statement of here, when he came in with the wash basin for some hot water ; he states that he fell and grabbed you by your clothing behind.

Mr. Patton : We object, unless it is proposed to deny that there was a scuffle there, a fight ; and if you propose to deny it it would be rebuttal ; if not, and to further explain, it would not be competent.

The Court : Mr. Bell having stated what transpired there she can give her statement as rebuttal of that.

Mr. McCain : Go on, Laura, and just state what transpired there that morning that he came in for that hot water. A. Well, there was twice he came to the cook-house ; he came in there the 2d day of October and the 16th. The 2d day of October I was in the cook-house, I was in there standing against the .

wall, I had the door shut up, and he came out there for his water to wash with, and I was standing up against the wall and he got his wash water in his pan and he reached over with his left hand and raised my clothes——

The Court: That is all in the case in chief; it is not rebuttal at all. We will sustain the objection.

Mr. Patton: We renew our objection because it is part of the plaintiff's case in chief.

The Court: Proceed. We will grant the defendant an exception and seal a bill. [9]

We think that under the circumstances, admitting the evidence of what transpired there, it would be right to let her give her version of this quarrel.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were (1–9) rulings on evidence, quoting the bill of exceptions.

*M. F. Leason* and *W. D. Patton*, for appellant, cited: Goerson v. Com., 99 Pa. 388; Swan v. Com., 104 Pa. 218; Hester v. Com. 85 Pa. 139; Zell v. Com., 94 Pa. 258; Clever v. Hilberry, 116 Pa. 431; Donaldson v. Com., 95 Pa. 21.

*James McCain, H. N. Snyder*, district attorney, and *W. J. Christy*, with him, for appellees, cited: 10 Am. & Eng. Ency. of Law, p. 345; Wharton's Am. Crim. Law, 3d vol., sec. 2653; Whart. Cr. Evidence, sec. 440; 1 Whart. Am. Cr. Law, sec. 683.

OPINION BY MR. JUSTICE McCOLLUM, Feb. 25, 1895:

Seven of the nine specifications of error filed in this case really raise but one question and that is whether in a prosecution for incestuous fornication it is competent for the commonwealth to introduce evidence of illicit relations between the parties prior to the commission of the specific offence laid in the indictment. In Wharton on Criminal Evidence, section 35, it is said by the learned author that " in prosecutions for adultery or for illicit intercourse of any class, evidence is admissible of sexual acts between the parties prior to, or when indicating continuousness of illicit relations, even subsequent to the act.

specifically under trial." This is in accord with the rule as stated in Greenleaf on Evidence, vol. 2, section 47, and in Am. & Eng. Ency. of Law, vol. 1, page 214, and vol. 10, p. 344. Roscoe in his treatise on criminal evidence says the notion that acts of improper intimacy cannot be shown if they disclose other and distinct offences of the same nature as the one charged in the indictment, is exploded. To this point the language of the court in State v. Markins, 95 Ind. 464, is so pertinent that we quote it: "It would be a singular rule that would admit evidence of lascivious conduct and yet exclude evidence of acts which of all the series supplies the strongest evidence that the crime charged was one likely to be committed. If the rule were that the state might show previous lascivious conduct, but must not show an act of sexual intercourse, we should have the singular anomaly of a legal rule rejecting evidence simply because of its strength and importance." If an act is so remote in point of time from the act laid in the indictment that the statute of limitations would protect the participants in it in case of their prosecution for it, it is still admissible if it is one of a series of acts indicating continuousness of sexual intercourse: Greenleaf on Ev., vol. 2, sec. 47, and Am. & Eng. Ency. of Law, vol. 10, p. 344, and cases cited. The principles above stated are well sustained by the cases referred to as authority for them, and they are not in conflict with any rule established by the decisions of this court. To the extent that our decisions throw light on the question we are considering they are in accord with these principles: Respublica v. Hevice et al., 2 Yeates, 114, and Gardner v. Madeira, Ib. 466. We conclude therefore that it was proper for the commonwealth to introduce evidence of prior illicit relations between the parties although such evidence disclosed other indictable offences of like nature which were barred by the statute of limitations. This evidence was carefully restricted by the learned court below to the purpose for which it was clearly admissible, and the correctness of· the instructions in regard to it is not questioned by any specification of error. But it appears in the evidence descriptive of the incestuous relations between the parties that the defendant denied the prosecutrix the privilege of attending church and Sunday school and of social intercourse with the young people of the neighborhood. While the exist-

ence of the fact thus disclosed was not disputed, the learned
counsel for the defendant contend that it was irrelevant, and
that its appearance in the case was prejudicial to their client.
If it be conceded that it was immaterial as an independent fact
having no relation to the alleged incestuous intercourse between
the parties, it does not follow that it was so, under the circum-
stances shown in this case. According to the testimony of
the prosecutrix the defendant based his denial of the privileges
mentioned on his desire for sexual intercourse with her. In
the light of this evidence it seems that the denial was prompted
by his illicit passion and was intended to secure the gratifica-
tion of it. Whether it be regarded as punishment for unwil-
lingness to yield to every demand of his lust or as a method of
increasing the opportunities for satisfaction of it, makes no
difference, as in either case it was an act in furtherance of his
incestuous purpose. In view of the prosecutrix's testimony in
regard to the defendant's explanation of the act and the state-
ment of his reasons for it, we cannot say that it was irrelevant.

There is no merit in the fifth specification of error. It is
defective and misleading because it does not show all that was
done under the ruling complained of. The prosecutrix was
asked if she told her brother and sisters about the offence
charged in the indictment at the time of it, or immediately after
its commission, and she replied that she did not, but added that
she told her sisters about it five or six months afterwards. The
court refused to allow her to state what she said to them, be-
cause upon her own showing, it was not within the ruling which
limited the evidence to what she said at the time or immediately
after the offence was committed. No motion was made by
defendant's counsel to strike out her answer or so much of it
as was not strictly responsive to the question, nor was any
suggestion made by them that it was in any degree prejudicial
to their client. In fact such suggestion could not have been
made with any show of reason for it. We conclude therefore
that there is nothing in the fifth specification which calls for a
reversal of the judgment.

The objection to the ruling complained of in the ninth speci-
fication of error is that the evidence offered was part of the
commonwealth's case in chief. This being so, the admission
of it in rebuttal is not assignable in error: Finlay v. Stewart,
56 Pa. 183, and Brown v. Finney, 67 Pa. 214.

The defendant ought not to object to what the prosecutrix said to her grandmother respecting the paternity of her second child. It was a declaration in support of his contention regarding its paternity and it cannot well be claimed that he was injured by it.

Judgment affirmed.