Commonwealth *v.* Moehring, Appellant.

Argued September 30, 1971. Before JONES, EAGEN, ROBERTS and POMEROY, JJ.

*Emanuel Goldberg,* for appellant.

*Robert L. Campbell,* Assistant District Attorney, with him *Carol Mary Los,* Assistant District Attorney, and *Robert W. Duggan,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE JONES, December 29, 1971:

The factual genesis of this appeal is set forth in *Lanning Will*, 414 Pa. 313, 315-16, 200 A. 2d 392, 393 (1964): "Decedent, 93 years of age, died on August 26, 1960. On December 1, 1960, decedent's lawyer-prepared typewritten will dated April 13, 1951, was admitted to probate. Three months later, George Moehring (Moehring), sole beneficiary under the holographic writing of September 4, 1954, appealed from the probate of the 1951 will. Moehring's appeal was sustained by the Orphans' Court of Allegheny County, and the Register of Wills was authorized to entertain an application to probate the 1954 will; thereafter, the 1954 will was duly probated. Shirley L. Lober, decedent's niece and residuary legatee under the 1951 will, then appealed to the Orphans' Court alleging (a) the 1954 will had been obtained through fraud, duress and undue influence exerted upon decedent by Moehring and his wife, (b) the said will was a forgery and (c) decedent lacked testamentary capacity."

The Orphans' Court of Allegheny County subsequently upheld the 1954 will and dismissed the appeal. On appeal to this Court, we reversed the decree and remanded the matter for proceedings consistent with the views expressed in our opinion. On remand, the Orphans' Court reversed its original position by sustaining the appeal of the contestant and vacating the earlier decree which had admitted the 1954 will to probate.

The two subscribing witnesses to the 1954 will were Jo Evelyn Johnston and Robert Johnston, her husband, who testified that, in the presence of Mr. Lanning, they had signed the 1954 will as subscribing witnesses at the request of Mr. Lanning and had seen him execute the will. Between the time we reversed the Orphans' Court of Allegheny County and the time of the second hearing on remand, both Johnstons repudiated their testimony

and admitted that they had not subscribed as witnesses in the presence of Mr. Lanning and, in fact, did not sign their names as witnesses until 1960 at the request of Mrs. Moehring (appellant), the operator of the nursing home in which Mr. Lanning had been a guest and the wife of the beneficiary under the 1954 will.

The Johnstons were indicted for perjury based on their testimony at the original probate hearing and appellant was indicted for subornation of perjury. When appellant's trial took place, Mr. Johnston was a witness for the Commonwealth and testified that he had lied under oath. Mrs. Johnston appeared as a witness for the appellant and recanted the statement which she had given to the effect that she had lied at the Orphans' Court hearing.* Appellant was subsequently found guilty of subornation of perjury by a jury and was sentenced after disposition of post-trial motions. The Superior Court affirmed per curiam, two judges concurring. *Com v. Moehring*, 216 Pa. Superior Ct. 135, 264 A. 2d 415 (1970). We granted allocatur and now reverse.

The only material evidence against appellant was the testimony of Mr. Johnston, who at the time of trial was himself under indictment for perjury. Nearly a month *before* appellant's trial, the Assistant District Attorney prosecuting appellant filed a petition to nolle pros. the indictment against Mr. Johnston. The Commonwealth's petition stated, *inter alia,* that Mr. Johnston ". . . gave [sic] testimony in the case of Commonwealth v. Ernestine Moehring . . . which resulted [sic] in her conviction for subornation of perjury. . . ." Eleven days after the trial and conviction of appellant, the Commonwealth's motion for the Johnston nolle pros was granted and costs were paid by the County.

---

\* In the meantime, the Johnstons had had marital difficulties and were separated.

At the appellant's trial, defense counsel explicitly asked Mr. Johnston whether he had "been offered by anybody in the District Attorney's Office, immunity from prosecution for perjury here today?" Mr. Johnston emphatically denied such an offer. The Assistant District Attorney who had filed the petition for nolle pros remained silent and did nothing to correct this false testimony. On redirect examination this same witness added emphasis to his earlier denial by stating that the Assistant District Attorney had told him that he "might be the only one ending up in jail" and "might end up the only person convicted in this entire matter."

Appellant contends that these occurrences constitute a prima facie showing of an agreement of favorable treatment between the witness and the Assistant District Attorney conditioned upon Mr. Johnston testifying on behalf of the Commonwealth. The existence of such an agreement places this case on all fours with *Napue v. Illinois*, 360 U.S. 264 (1959), which has been followed and cited with approval by this Court on numerous occasions. *Commonwealth v. Alston*, 430 Pa. 471, 243 A. 2d 404 (1968); *Commonwealth v. Snyder*, 427 Pa. 83, 233 A. 2d 530 (1967); *Commonwealth ex rel. Budd v. Maroney*, 418 Pa. 454, 211 A. 2d 479 (1965). In *Napue* the sole witness against the defendant falsely denied that he had been promised any favorable treatment from the Assistant State Attorney and the Assistant State Attorney "did nothing to correct the witness' false testimony". The United States Supreme Court unanimously reversed the judgment and observed: "The principle that a State may not knowingly use false evidence, including false testimony, to obtain a tainted conviction implicit in any concept of ordered liberty, does not cease to apply merely because the false testimony goes only to the credibility of a witness. The jury's estimate of the truthfulness and

reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factors as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend." 360 U.S. at 269.

In failing to correct Mr. Johnston's "false testimony", the Assistant District Attorney was acting contrary to the salutary principles enunciated in the ABA Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function (Approved Draft 1971). The commentary to §5.6(a) states: "Even if false testimony is volunteered by the witness and takes the prosecutor by surprise rather than being solicited by him, if he knows it is false his obligation is to see that it is corrected." *See, also,* ABA Project on Standards for Criminal Justice, Standards Relating to The Prosecution Function and The Defense Function, §3.11 (Approved Draft 1971).

Here, as in *Papue,* the Commonwealth's case against the defendant rested on the testimony of a single witness. His "false testimony", uncorrected by the Commonwealth, may well have been "determinative of guilt" and led to a "tainted conviction". In such a situation, where credibility plays such a critical role, the appropriate relief must be a new trial.

Lastly, this error could not be cured by any defense speculation about Mr. Johnston's motive for testifying. As stated by the Supreme Court in *Napue*: "we do not believe that the fact that the jury was apprised of other grounds for believing that the witness Hamer may have had an interest in testifying against petitioner turned what was otherwise a tainted trial into a fair one. . . . Had the jury been apprised of the true facts, however, it might well have concluded that Hamer had fabricated testimony in order to curry the favor of the very representative of the State who was

406

prosecuting the case in which Hamer was testifying. . . ." 360 U.S. at 270.

The order of the Superior Court and the judgment of sentence imposed by the Allegheny County Court of Common Pleas are reversed and the appellant is granted a new trial.

Mr. Chief Justice BELL, Mr. Justice O'BRIEN and Mr. Justice BARBIERI took no part in the consideration or decision of this case.