495 A.2d 569

COMMONWEALTH of Pennsylvania, Appellee,

v.

Hector RODRIGUEZ, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 15, 1984.

Filed June 28, 1985.

488

John P. Cotter, Philadelphia, for appellant.

Janet McGarry, Assistant District Attorney, for Commonwealth, appellee.

Before CAVANAUGH, BECK and TAMILIA, JJ.

CAVANAUGH, Judge:

In this case, Hector Rodriguez appeals from the judgment of sentence entered against him after he was found guilty by jury of Involuntary Deviate Sexual Intercourse, 18 Pa. C.S. § 3101. Appellant alleges that the trial court erred in

several respects and requests that we order a new trial or dismiss the charge. We find appellant's contentions to be without merit.

The evidence viewed in the light most favorable to the Commonwealth as verdict winner reveals that the complaining witness, a fourteen year old boy named Pedro Falu, went to the apartment of his uncle, the appellant, Hector Rodriguez, on Friday, March 26, 1982, for purposes of "running away" with him to New York. That evening, appellant committed the sexual assault which is the basis of this appeal. Pedro stayed with appellant until the following Tuesday, when appellant and two others took him to an abandoned factory, robbed him, tied him up atop a boiler some six feet above the ground, and departed, leaving the boy there alone for an undetermined period of time. After loosening the gag that had been placed over his mouth, young Pedro's cries for help were eventually heard and he was taken to a hospital.

Appellant's first contention is that the court below erred in admitting the prior inconsistent statement of a defense witness, Max Cross. On the stand, Mr. Cross denied any participation in the robbery of Pedro Falu. The prosecutor, in an attempt to impeach Cross' testimony, introduced a statement Cross had made to the police wherein he admitted his participation in the robbery. Appellant now alleges it was error to admit this prior inconsistent statement because the prosecutor in fact knew that Cross had *not* participated in the robbery. Importantly, appellant does not argue that Cross never made the prior statement, nor does he argue that there is no inconsistency between the two statements. Rather, he argues that a prosecutor may not knowingly introduce false evidence. In support of this, appellant cites *Commonwealth v. Moehring*, 445 Pa. 400, 285 A.2d 487 (1971). Unlike the instant case, *Moehring* dealt with a prosecutor who knowingly introduced false evidence as part of his case-in-chief and the Commonwealth's case against the defendant rested on this evidence. Appellant has not proven that the prosecutor "knew" the prior statement was

false nor has he briefed any reasons substantiating this allegation. Moreover, appellant has not asserted that the Commonwealth's case rested on this "evidence."

Our review of the record reveals that, even before Cross took the stand at the behest of the defense, the defense anticipated the impeachment that subsequently ensued. Appellant assumed the risk of the impeachment when he decided to have Cross testify.

 As a matter of policy, our courts admit prior inconsistent statements in order to call into question a witness' credibility in general and to alert the jury of the potential for error in his testimony. *See Commonwealth v. Woods,* 275 Pa.Super. 392, 418 A.2d 1346 (1980). The prior statement in the instant case was not offered to prove the truth of the matter asserted; it was offered to cast doubt on the witness' trustworthiness. The basis of this manner of impeachment lies in the inconsistency of the statements and it matters not if the prosecutor believed that the prior statement reflected the truth less accurately than the statement made on the stand. We shall defer to the jury's inherent ability for judging the character of witnesses, and we hold that the prior inconsistent statement was properly admitted as a tool to that end. *See Commonwealth v. Brown,* 302 Pa.Super. 391, 448 A.2d 1097 (1982).[1]

 Appellant next contends that the mother of the complaining witness should not have been permitted to testify as to what her son, Pedro Falu, told her at the hospital on April 1, 1982.

On Wednesday night, after being taken to the hospital, Pedro Falu spoke with his mother, Mrs. Rosa Rodriguez. On this first meeting with his mother after he had run away the previous Friday, Pedro told his mother about the sexual assault perpetrated upon him. In *Commonwealth v. Freeman,* 295 Pa.Super. 467, 441 A.2d 1327 (1982), we wrote:

[1]. We feel it incumbent upon us to note that even the implication of prosecutorial wrongdoing similar to that committed in *Moehring* is a very serious allegation that should never be invoked lightly.

Appellant further contends that the court improperly admitted testimony by the victim that she reported the alleged rape to others and also statements by the victim's sister-in-law confirming that the victim related the incident to her immediately following its occurrence. The lower court held, and we believe properly so, that such testimony was admissible to show a "prompt complaint" of the alleged crimes. Of course, the fact that a victim made a prompt complaint is no longer required to sustain a rape conviction, See 18 Pa.C.S.A. § 3105. It is nonetheless competent evidence, properly admitted when limited to establish that a complaint was made and also to identify the occurrence complained of with the offense charged. *Commonwealth v. Green*, 487 Pa. 322, 328, 409 A.2d 371, 374 (1979); *Commonwealth v. Pettiford*, 265 Pa.Super. 466, 468, 402 A.2d 532, 533 (1979); *Commonwealth v. Sanders*, 260 Pa.Super. 358, 365, 394 A.2d 591, 594 (1978). *See generally* 4 Wigmore, Evidence §§ 1134–1140 (Chadbourn rev. 1972).

\* \* \* \* \* \*

In a prosecution for rape, fresh complaints made by the alleged victim, consistent with her testimony at trial, benefit from a special evidential rule that makes evidence thereof admissible in the Commonwealth's case in chief. The rationale for this rule is best understood by reference to its background.

Evidence of the alleged victim's "hue and cry" following rape has long been admissible at common law. Hue and cry is thought to follow rape like smoke follows fire. Proof of the former is circumstantial evidence of the latter. Conversely, unexplained lack of evidence of hue and cry that one might expect to ensue from rape casts doubt on the existence of the rape itself.

Fresh complaints of rape, undetailed, are a particular form of hue and cry that provides significant circumstantial support for the alleged victim's subsequent testimony that she was raped. Such fresh complaints are classified evidentially as prior consistent statements.

*Freeman,* 295 Pa.Super at 475–76, 441 A.2d at 1331–32.[2] Even though Pedro did not run home shortly after the incident on the previous Friday to report it to his mother, we hold that Mrs. Rodriguez's testimony concerning what Pedro told her in the hospital is admissible because it contains sufficient indicia of reliability. Pedro had run away from home and feared returning because he thought he might be placed in a "boys' home" if he did. The statement to his mother was made not long after the last in a series of indignities inflicted upon him by his uncle, and it was made in the setting of a hospital where Pedro had been taken following his ordeal at the abandoned factory. He had shown initial reluctance to tell his mother what had happened, until she reminded him of her great love for him. Tearfully, he confided in her and reported the Friday night assault without going into excessive detail. If, during Mrs. Rodriguez's testimony, she had failed to state that Pedro told her of the incident during their tearful hospital reunion, it may have cast some doubt in the minds of some jurors about whether the criminal incident at issue actually occurred. It was as natural for Pedro to confide in his mother as it is that smoke follows fire and, thus, it was not error to allow this testimony.

Appellant's third and fourth contentions relate to the judge's instruction to the jury. First, appellant maintains that the judge should have used appellant's suggested instruction rather than his own as it gave a better definition of reasonable doubt, and also because it would have instructed the jury that the defense is not required to show motive to lie.

 A trial judge need not charge the jury pursuant to every request made of him. Nor is there an exact formula that must invariably be followed in charging the jury as to reasonable doubt. *Commonwealth v. Young,* 456 Pa. 102,

**2.** In *Commonwealth v. Quartman,* 312 Pa.Super. 349, 458 A.2d 994 (1983), we held the Pennsylvania sexual offense provisions to be "gender neutral". Thus, the analysis employed in *Freeman* where the victim was a female, should apply with equal force to the instant case where the victim is a fourteen year old male.

317 A.2d 258 (1974); *Commonwealth v. Dozier,* 294 Pa.Super. 249, 439 A.2d 1185 (1982). Our review of the instruction convinces us that the judge adequately guided the jury as to its duty.

■ Appellant's other contention concerning the charge relates to the language used by the judge when he told the jury that a positive unqualified identification of one witness *is sufficient* for conviction. Appellant argues that the judge should have used the word "maybe" (may be?) instead of "is". We are not prepared to agree that there is necessarily a substantive difference between the two choices. Nevertheless, this claim is without merit. In *Commonwealth v. Kloiber,* 378 Pa. 412, 424, 106 A.2d 820, 824 (1954), our Supreme Court stated: "A positive, unqualified identification of defendant by one witness *is* sufficient for conviction even though half a dozen witnesses testify to an alibi." (Emphasis added.) *See also Pennsylvania Suggested Jury Instructions* (Crim) § 413B. We are therefore constrained to accept this portion of the charge as a proper statement of the law. Moreover, it is not proper to isolate selected portions of the charge in this manner; we must look at the charge as a *whole* to see if it fairly guided the jury. *Kloiber, supra.* Our review of the charge reveals that the jury was fairly guided.

■ Appellant's fifth contention is that the complaining witness, Pedro Falu, should not have been permitted to testify as to his prior sexual encounters with the appellant. This claim must fail as well. While, generally, evidence that a defendant has committed other crimes is not admissible because of the prejudice such admissions would likely engender in the minds of the jurors, *Commonwealth v. Bradley,* 243 Pa.Super. 208, 364 A.2d 944 (1976), this court has held that the Commonwealth may introduce evidence of prior incestuous relations between an appellant and victim.[3]

3. The crime in question appears to fall within the incest statute, 18 Pa.C.S. § 4302, as appellant was Pedro's uncle. Caution demands us to note that even if appellant was not Pedro's uncle by whole blood as the incest statute requires, we find the rationale in *Niemetz* to be

The general rule in Pennsylvania is that "evidence of criminal activity not charged in the indictment or information on which the defendant is being tried cannot be introduced at trial *except in certain limited circumstances....*" *Commonwealth v. Fuller*, 479 Pa. 353, 357, 388 A.2d 693, 694 (1978) (citations omitted) (emphasis added). In *Commonwealth v. Bell*, 166 Pa. 405, 31 A. 123 (1895), our supreme court ruled that a prosecution for incest was such an exception. The court there held that in such a case it is "competent for the Commonwealth to introduce evidence of illicit relations between the parties *prior* to the specific offenses laid in the indictment." *Id.*, 166 Pa. at 411, 31 A. at 123 (emphasis added).

Appellant's reliance on *Commonwealth v. Bradley*, 243 Pa.Super. 208, 364 A.2d 944 (1976) is misplaced. *Bradley* simply adheres to the long held view that evidence of similar sexual crimes committed on or with persons other than the victim of the crime then being prosecuted is inadmissible to show a propensity for illicit conduct. *See, e.g., Commonwealth v. Leppard*, [271] Pa.Super. [317], [319], 413 A.2d 424, 425 (1979) (Spaeth, J., concurring). Accordingly, in the instant case, as in *Leppard*, we find *Commonwealth v. Bell, supra*, controlling and " 'conclude ... that it was proper for the Commonwealth to introduce evidence of prior illicit relations between the parties although such evidence disclosed other indictable offenses of like nature which were barred by the statute of limitations.' 166 Pa. at 412, 31 A. at 123, 124." *Commonwealth v. Leppard*, [271] Pa.Super. [317], [319], 413 A.2d 424, 425 (1979).

*Commonwealth v. Niemetz*, 282 Pa.Super. 431, 422 A.2d 1369 (1980).[4]

applicable here. We do not find the issue of whether the appellant was of whole or half-blood to be important in the context of this case.

**4.** In *Commonwealth v. Campbell*, 342 Pa.Super. 438, 493 A.2d 101 (1985), appellee was found guilty of perpetrating statutory rape and incest upon his daughter. However, the lower court granted a new trial, and this court affirmed, because the court erroneously admitted evidence of a single sexual assault committed by appellee on his

■ Appellant's sixth contention is that he should have been permitted to introduce certain polygraph evidence. Appellant acknowledges that the law at present does not permit this defense, *see Commonwealth v. Pfender*, 280 Pa.Super. 417, 421 A.2d 791 (1980), but he raises it in the event a petition for allowance of appeal to the Supreme Court becomes appropriate. While it is a commendable effort to preserve an argument, we are constrained to forbid the use of such evidence as there is a decided lack of precedent finding that polygraphic evidence is scientifically reliable. Thus, we forbid its introduction even where the defense and prosecution stipulate that it be submitted into evidence *Commonwealth v. Pfender, supra.*

■ Appellant's seventh and final contention is, once again, that the judge's instruction was erroneous. When commenting on the involvement of a co-defendant in the robbery, the judge allegedly said "there is no question as to whether the act was committed or not." The judge states that this was a typographical error and that what he in fact said was "and there the question is whether the act was committed or not...." (Lower Court Op. at 5). As no objection was made at the time, even if there had been no typographical error, the issue has been waived. *See Commonwealth v. Cartagena*, 482 Pa. 6, 393 A.2d 350 (1978). Furthermore, we reiterate that the jury charge must be

daughter approximately a-year-and-a-half prior to the criminal incident which was the basis of the trial. While we do not necessarily agree with *Campbell*, we find that the instant case is clearly distinguishable. In the instant case, Pedro testified three times that his uncle told him he "used to" perform the illicit act on Pedro when Pedro was younger, and his uncle also said that when Pedro was younger, he was a "faggot." This clearly indicates that the acts testified to were not merely isolated incidents but constituted a *series* of illicit acts. The *Bell* court, *supra*, sought to guard against evidence of isolated acts by holding that such evidence is "admissible if it is one of a series of acts indicating continuous sexual intercourse." *Commonwealth v. Bell*, 166 Pa. 405, 412, 31 A. 123 (1895).

We further note that the testimony was admissible as an admission on the part of the appellant and that appellant spoke the words in an attempt to persuade Pedro to willingly submit to further illicit abuse. Although the acts testified to were remote, they were not isolated. Thus, neither *Bell* nor *Campbell* forbids their admission.

viewed as a whole. *See Commonwealth v. Kloiber, supra.* A fair reading of the charge compels us to hold that this statement, even if made as appellant alleges it was, did not cause the jury's truthfinding vessel to be steered off its course on the sea of justice.

Judgment of sentence affirmed.

BECK, Judge, concurring:

I concur in the result. I, however, would find testimony of prior incestuous activity which occurred nine years before the incident complained of inadmissible as not relevant. Although testimony of prior incestuous relations between the parties is admissible under some circumstance, testimony of isolated acts remote in time should not be admitted.

As the majority indicates, the Pennsylvania Supreme Court, in *Commonwealth v. Bell,* 166 Pa. 405, 412, 31 A. 123 (1895), held admissible testimony of prior incestuous acts. The *Bell* court underscored that such evidence is "admissible if it is one of a series of acts indicating *continuousness of sexual intercourse.*" (emphasis added).

Similarly, in *Commonwealth v. Niemetz,* 282 Pa.Super. 431, 422 A.2d 1369 (1980), testimony of prior incestuous acts was held admissible. The victim's testimony painted a picture of sexual intercourse with her stepfather that had become routine pattern for a period of nine years. In *Niemetz,* unlike the case sub judice, the nine-year-old sexual act testified to was one link in a continuous chain of sexual assaults.

Testimony of prior incestuous acts was admitted in *Commonwealth v. Leppard,* 271 Pa.Super. 317, 413 A.2d 424 (1979). Once again, however, the victim testified to repeated sexual acts over a period of several years.

In contrast with these cases, the testimony offered in the instant case concerned acts which occurred nine years before. The past acts did not indicate a pattern of sexual intercourse in a series. Rather, the crime charged and the prior acts were isolated events. The prior acts were too

remote and therefore not relevant as to whether the appellant was guilty of the act complained of.

Given the overwhelming evidence of appellant's guilt of the crime charged, I would find the admission of the testimony of prior sexual acts harmless error.