J. A20005/14

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :     IN THE SUPERIOR COURT OF
                                        :            PENNSYLVANIA
                v.             :
                                          :
ALLYN PAPPERT,                 :           No. 2570 EDA 2012
                                          :
                Appellant       :


Appeal from the Judgment of Sentence, May 1, 2012,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0004546-2010


BEFORE: FORD ELLIOTT, P.J.E., MUNDY AND MUSMANNO, JJ.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:      **FILED NOVEMBER 25, 2014**

Allyn Pappert shot his daughter after an argument about her boyfriend. On January 20, 2012, after a four-day jury trial, appellant was convicted of third degree murder and possessing an instrument of crime ("PIC"). Appellant now appeals from the judgment of sentence; we affirm.

Kathy Pappert, the 41-year-old victim, was dating a man named Jay.[1] Appellant disapproved of his daughter's relationship and was strongly opposed to the couple living together. Appellant once told Linda Pappert, Kathy's mother and his ex-wife, "You know, sometimes I really feel like killing your daughter." (Notes of testimony, 1/18/12 at 26.) He also talked to Linda about shooting Jay with a hollow point bullet, and appellant also

---

[1] We note Jay's surname is not of record.

remarked that he "wouldn't think twice" about using such dangerous ammunition on another person. (*Id.* at 25.) When pressed by Linda as to what he would do to hide the body if he killed the victim, appellant indicated that he "wouldn't want to ruin [his] blender" because "the bones would ruin [the blade]." (*Id.* at 27, 42.) Appellant indicated he was comfortable with going to jail if he was caught as he would receive medicine for his affliction, "have like three meals a day," and be given a "place to sleep." (*Id.* at 27, 30-31.)

On February 14, 2010, the victim had an argument about Jay with appellant in the rear bedroom of his home. After unsuccessfully calling a taxicab to arrange a ride to Jay's house, the victim told appellant, "I'm out of here," and appellant responded by commanding "You ain't going nowhere. Get back in here." (*Id.* at 231.) As the victim attempted to leave, appellant picked up one of his guns and shot his daughter in the right side of her torso. (*Id.* at 227-229.) The victim staggered down the stairs to the living room, lay down on a sofa bed, and screamed for help. (*Id.* at 98-100.)

Appellant called 911 and the tape was played for the jury. Appellant told the dispatcher that he shot his daughter who had been "bitching and moaning" about having been shot. Appellant expressed that the victim had been "destroying his house" and that he was 64 years old and on disability insurance and could not afford to fix the things she broke. As his daughter was dying, appellant accused her of continued malfeasance, telling the

- 2 -

operators that "she's destroying shit downstairs," and that "she won't listen to me." (Exhibit C-37.)

At approximately 3:55 a.m., pursuant to a radio call, Philadelphia Police Sergeant Jeffrey Rabinovitch arrived to 3184 Belgrade Street. Here, he met Officer Herring who was trying to kick in the front door as he could hear screaming inside. Upon entering the home, Sergeant Rabinovitch observed the victim lying on the bed bleeding. The sergeant asked her if she had been shot and she responded, "My dad shot me" and indicated that appellant was upstairs. At this time, the SWAT team arrived and the police found appellant seated at a desk on the phone with 911. As appellant was being arrested, he stated, in a "very casual, nonchalant" manner, that he shot his daughter because "[s]he wouldn't shut up." (Notes of testimony, 1/18/12 at 96-104.) The officer also testified that appellant's demeanor was "disturbingly casual" considering the circumstances. (Id. at 103.) Several other weapons and "hundreds" of rounds of live ammunition were recovered from the house. (*Id.* at 76-78.)

Detective Nathan Williams interviewed appellant following his arrest after appellant waived his **Miranda**[2] rights. The detective testified that appellant appeared emotionless and confessed to shooting his daughter with his Walther P-99 .40 caliber handgun. He stated that the victim made six calls on his phone, and each one cost him money; he also averred that he

---

[2] **Miranda v. Arizona**, 384 U.S. 436 (1966).

was on a fixed income and that the victim had stopped paying him money.

Appellant alleged that the victim broke his cordless phone by throwing it

against the door.  When describing how he shot his daughter, he stated:

> I said, Kathy, if you destroy anything else in this house, then you're going to have to go.  You're going to have to pay for it.
>
> I had the gun in my hand and my finger on the trigger, and it went boom.  She was standing right there in the doorway.  I had my finger on the trigger because I don't normally keep a bullet in the chamber, just in the magazine, should I drop it or something and it didn't go off.

Notes of testimony, 1/18/12 at 227.

An expert in ballistics, Officer Ronald Weitman, examined the

Walther P-99, the projectile recovered from the body, and other ballistics

evidence recovered.  Officer Weitman explained that the Walther P-99 has a

double-Action/single-action trigger with a decocker.  (Notes of testimony,

1/19/12 at 18-19.)  The officer explained that this weapon is incapable of

firing a projectile unless someone physically chambered a round from the

magazine.  (*Id.* at 28-30.)  The gun must either be intentionally put into

single-action mode, or else be manually cocked by pulling a mechanism on

the gun backward and forward before firing.  (*Id.*)  The officer also testified

that the gun was loaded with hollow-point bullets; these bullets are designed

to "mushroom," expand and cause collateral damage, upon impact with

human flesh.  (*Id.* at 30, 47.)  Dr. Marlon Osbourne, the assistant medical

examiner, determined the cause of death was a homicide.  (Notes of

testimony, 1/18/12 at 154-158.)  Dr. Osbourne testified that the bullet traveled through the victim's arm, liver, interior vena cava, and stomach; ultimately, the bullet lodged underneath her skin.  (*Id.* at 171.)

Appellant testified at trial.  He admitted to owning multiple guns and having ammunition in the house.  (Notes of testimony, 1/19/12 at 117.)  He habitually carried a gun around the house.  (*Id.* at 119.)  While he did not like the victim's boyfriend, he testified he had never threatened to kill him or his daughter.  (*Id.* at 120.)  His defense was that the shooting was an accident, which contradicted several accounts he had previously given that he shot his daughter because she "wouldn't shut up."  His explanation at trial was:

> And I goes -- got there.  I turned around and I seen [sic] the gun laying [sic] on the desk.  I go, oh, man, you ain't taking my gun.  Like that.
>
> I went to grab it, and I'm not [sure] -- I'm watching her so she don't [sic] turn around and see where I'm gonna hide it.  I grab it like that there.  I slid it to the edge of the desk.  And I guess I over shot it, and it dropped.  I grabbed it.  When I grabbed it, it went off.

*Id.* at 133-134.  He also explained that he had told the 911 dispatchers that his daughter was "bitching and moaning" because he thought she might be "upset" about having been shot.  (*Id.* at 145-146.)

On cross-examination, appellant denied telling his wife that he had a hollow-point bullet with the victim's boyfriend's name on it and that he

would use a blender[3] to dispose of the victim's body in the event that he murdered her. (*Id.* at 185.) Appellant testified that the only thing the victim broke before he shot her was his cordless phone, and he admitted that he had once been told that hollow point bullets were capable of "a one[-]shot drop." (*Id.* at 194, 213.)

On January 20, 2012, the jury returned guilty verdicts for third degree murder and PIC. On May 1, 2012, the court imposed a sentence of 20-40 years' imprisonment for murder and a consecutive 1-2 year sentence for PIC. Appellant filed post-sentence motions on May 4, 2012; the motions were denied on August 17, 2012. Appellant filed a timely notice of appeal, and the trial court filed an opinion.[4] (Docket #9, 10.)

Appellant now presents the following issues for our review:

1. Were the convictions for the crimes of Murder of [sic] the Third Degree and [PIC] not supported by sufficient evidence?

2. Were the convictions for the crimes of Murder of [sic] the Third Degree and [PIC] against the weight of the evidence?

3. Did Judge Robins New err when she failed to charge the jury on the crime of Involuntary Manslaughter? Did the evidence demonstrate or suggest [appellant] was acting only negligently or recklessly, thereby warranting an Involuntary Manslaughter charge?

---

[3] Appellant referred to the appliance as a juicer. (*Id.*)

[4] Appellant was not ordered to and did not file a concise statement of errors complained of on appeal within 21 days pursuant to Pa.R.A.P., Rule 1925(b), 42 Pa.C.S.A.

4. Did the trial judge err in not granting a mistrial and did the District Attorney err in eliciting a prior alleged unrelated bad act and hearsay testimony that [appellant] came to the door with a gun two years before? Was the prejudice by this hearsay and alleged unrelated bad acts not curable by the curative instruction?

5. Did the trial judge err in not granting a mistrial and did the District Attorney err in eliciting from [appellant's] ex-wife, Linda Pappert, that [appellant] told her he would not think twice of using a hollow point bullet on a person, and then allow her to further state he would use the bullet on the decedent's boyfriend? (1/18 N.T. 25). Did this reference to unrelated bad acts deny [appellant] his right to due process and fair trial?

Appellant's brief at 6-7.

The first issue presented for our review is whether the evidence was sufficient to support the verdicts of third degree murder and PIC. No relief is due.

Prior to addressing this issue, we will recite our standard of review:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that

as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hutchinson*, 947 A.2d 800, 805-806 (Pa.Super. 2008), *appeal denied*, 980 A.2d 606 (Pa. 2009), quoting *Commonwealth v. Andrulewicz*, 911 A.2d 162, 165 (Pa.Super. 2006).

"Third degree murder occurs when a person commits a killing which is neither intentional nor committed during the perpetration of a felony, but contains the requisite malice." *Commonwealth v. Tielsch*, 934 A.2d 81, 94 (Pa.Super. 2007), *appeal denied*, 952 A.2d 677 (Pa. 2008), *cert. denied*, 555 U.S. 1072 (2008) (citation omitted). "Malice is not merely ill-will but, rather, wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty." *Commonwealth v. Hardy*, 918 A.2d 766, 774 (Pa.Super. 2007), *appeal denied*, 940 A.2d 362 (Pa. 2008). "Malice may be inferred from the use of a deadly weapon on a vital part of the victim's body." *Commonwealth v. Gooding*, 818 A.2d 546, 550 (Pa.Super. 2003), *appeal denied*, 835 A.2d 709 (Pa. 2003).

Appellant contends the Commonwealth did not demonstrate malice or a motive for shooting the victim. (Appellant's brief at 33.) He points to the

fact that he called 911 and cooperated with the police. (*Id.* at 33, 36.) Appellant also avers he "easily could have continued to shoot" as there were more bullets in the gun. (*Id.* at 37.) He states that, at most, the evidence shows that he acted negligently and recklessly in picking up the gun, which discharged and killed his daughter. We disagree.

There is no doubt in this matter that the Commonwealth proved appellant killed the victim with malice. When viewed in the light most favorable to the Commonwealth, the evidence demonstrates that appellant shot his daughter through her torso, a vital part of the body, with a deadly weapon; such is sufficient to permit an inference of malice necessary for murder in the third degree. *Gooding*, *supra*. Overwhelming evidence was presented, including three inculpatory statements from appellant, including a confession, that appellant shot the victim after an argument as she "wouldn't shut up" and was "destroying his house." The argument was about her boyfriend, whom appellant admittedly disliked. The Commonwealth also demonstrated malice through appellant's assertions on the 9-1-1 tape. Moreover, expert testimony was presented that the gun used must either be intentionally put into single-action mode, or else be manually cocked by pulling a mechanism on the gun backward and forward before firing.

The Commonwealth also presented testimony that appellant had previously threatened to kill the victim and her boyfriend; in fact, he had

threatened to shoot her boyfriend with the same type of hollow-point bullet. Appellant also indicated he would dispose of the victim's body in a blender if he "actually killed her" if it would not damage the blender.

Clearly, the jury was permitted to reject appellant's self-serving claim that the gun had accidentally discharged. Additionally, "the Commonwealth need not prove motive in order to establish the existence of malice." **Commonwealth v. D'Ambro**, 456 A.2d 140, 143 n.5 (Pa. 1983). **See also Commonwealth v. Manchas**, 633 A.2d 618, 623 (Pa.Super. 1993), **appeal denied**, 651 A.2d 535 (Pa. 1993). Suffice it to say that the trial court's verdict was supported by evidence legally sufficient to sustain a conviction for third degree murder.

With regard to his conviction for PIC, appellant claims that the evidence does not suggest the intent to employ the gun criminally. (Appellant's brief at 39.) Possession of an instrument of a crime is "a misdemeanor of the first degree if [a defendant] possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907(a). Given the above discussion of the third degree murder charge, there is sufficient evidence from which the fact-finder could infer that appellant possessed a gun with intent to use it in a criminal manner. Accordingly, we affirm this conviction.

Appellant further contends that the verdict of guilty of third degree murder was so contrary to the weight of the evidence that he should have been granted a new trial.

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> This does not mean that the exercise of discretion by the trial court in granting or denying a motion for a new trial based on a challenge to the weight of the evidence is unfettered. In describing the limits of a trial court's discretion, we have explained[,] [t]he term 'discretion' imports the exercise of judgment, wisdom and skill so as to reach a dispassionate conclusion within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judge. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice or arbitrary actions. Discretion is abused where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will.

***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (emphasis removed) (citations omitted).

- 11 -

Appellant essentially reasserts his sufficiency of the evidence claim. He states that he wishes to incorporate many of his sufficiency arguments into his weight claim. (Appellant's brief at 44.) Nevertheless, to the extent that his weight claim can be distinguished, it fails to provide a basis for relief. Appellant argues that the trial court abused its discretion by denying his weight claim as there was "no motive" for the murder, he had no prior criminal record, and he only shot his daughter once. Appellant also avers that he had been taking the gun to hide it when it went off, and he fully cooperated with the police.

Obviously, the jury rejected appellant's claim that the shooting was accidental. Again, testimony was presented that appellant had a contentious history with his daughter about her boyfriend and had previously threatened to kill her. Following an argument, appellant grabbed his gun and shot her in the torso. Appellant called 911 while his daughter lay bleeding and stated that he shot her because she "wouldn't shut up" and related that she was "bitching and moaning" about being shot. The trial court heard the competing evidence and did not find that the jury's decision was shocking to its conscience. Appellant is not entitled to relief.

In his third issue, appellant asserts he requested a jury instruction for involuntary manslaughter, which the court denied. Appellant, however, maintains the facts at trial supported such an instruction. We disagree.

"Our standard of review when considering the denial of jury instructions is one of deference -- an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." *Commonwealth v. Baker*, 24 A.3d 1006, 1022 (Pa.Super. 2011) (citation omitted). When reviewing the trial court's instructions, the whole charge must be examined. *Commonwealth v. Lesko*, 15 A.3d 345, 397 (Pa. 2011). The trial court is not required to instruct the jury pursuant to every request. *Commonwealth v. Rodriguez*, 495 A.2d 569, 572 (Pa.Super. 1985).

It is well settled that an instruction on a mitigated form of homicide is "warranted where the offense is at issue and the evidence would support such a verdict." *Commonwealth v. Montalvo*, 986 A.2d 84, 100 (Pa. 2009). The crime of involuntary manslaughter is defined as follows: "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a). "Where the act itself is not unlawful, to make it criminal, the negligence must be such a departure from prudent conduct as to evidence a disregard for human life or an indifference to the consequences." *Commonwealth v. McLaughlin*, 401 A.2d 1139, 1141 (Pa. 1979).

Instantly, appellant testified that the shooting occurred as he attempted to hide the gun from the victim so that she would not take the weapon. Appellant claimed to believe the gun did not have a bullet in the chamber at the time and thus it was not immediately fireable. At trial, he blamed the victim declaring, "she must have loaded it, because I didn't." (Notes of testimony, 1/19/12 at 149.) Appellant then averred he slid the gun to the edge of the desk but "over shot it and it dropped." (*Id.* at 133-134.) After it fell "about four. . . [or] five inches," appellant "grabbed it with both hands" and "it went off." (*Id.* at 134-135, 163-164.)

The trial court concluded that appellant's claim that the shooting was a complete accident was not "the type of recklessness needed for a finding of involuntary manslaughter." We agree. Appellant's act of reaching for the gun on the desk would not be an "unlawful act" within the definition of involuntary manslaughter, *see Commonwealth v. Flax*, 200 A. 632, 638 (Pa. 1938), and appellant's act of grabbing it after it fell on the floor could not be seen as needlessly creating a danger to human life, thus constituting criminally negligent conduct.

Rather, appellant's version, if believed by the jury, would have supported a verdict of homicide by misadventure, which was an instruction provided by the court. (Notes of testimony, 1/20/12 at 111-112.) In *Flax*, *supra*, we defined an accidental killing which would relieve the actor of criminal responsibility for the death as being:

> Homicide by misadventure (which is excusable) is the accidental killing of another, where the slayer is doing a lawful act, unaccompanied by any criminally careless or reckless conduct. 'Three elements enter into the defense of excusable homicide by misadventure: (1) The act resulting in death must be a lawful one. (2) It must be done with reasonable care and due regard for the lives and persons of others. (3) The killing must be accidental and not intentional, or without unlawful intent, or with out evil design or intention on the part of the slayer. All these elements must concur and the absence of any one of them will involve in guilt. Even though the homicide is unintentional, it is not excusable where it is the result or incident of an unlawful act, such as pointing or presenting a gun, pistol or other firearm at another person in such a manner as to constitute an offense under the laws of the state, . . . .'

***Flax,*** at 637-638.

Appellant's actions meet this criteria as he testified his actions were done with reasonable care and due regard for his daughter. Appellant's testimony did not establish that he was reckless or grossly negligent to warrant an involuntary manslaughter charge. Appellant testified that he exercised great care to prevent accidents with his firearms; he explained the safety precautions taken and his intent to hide the gun for his daughter's well-being. (***See*** notes of testimony, 1/19/12 at 20, 143, 176). His defense was that by happenstance the gun fell and discharged.

Moreover, although appellant claimed he shot the victim accidentally, the trial evidence indicated otherwise. ***See Commonwealth v. Rogers***, 615 A.2d 55, 62 (Pa.Super. 1992) (where the physical evidence is in

contradiction to the defendant's testimony, the court may refuse an inapplicable instruction). Expert testimony was presented that appellant would have had to manually chamber a round. Thus, he was not entitled to an instruction on involuntary manslaughter.

In his fourth issue, appellant claims the trial judge erred in failing to grant a mistrial after the District Attorney elicited a prior alleged, unrelated bad act as well as hearsay testimony that appellant came to the door with a gun two years before the victim's death. (Appellant's brief at 49.) Appellant acknowledges the trial court's cautionary instruction, but claims no instruction could cure the prejudice derived from the testimony. (**Id.** at 50.)

> We review the trial court's decision to deny a mistrial for an abuse of discretion. **Commonwealth v. Boone**, 862 A.2d 639, 646 (Pa.Super.2004). A mistrial is necessary only when "the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." **Commonwealth v. Parker**, 957 A.2d 311, 319 (Pa.Super.2008), **appeal denied**, 600 Pa. 755, 966 A.2d 571 (2009). A mistrial is inappropriate where cautionary instructions are sufficient to overcome any potential prejudice. **Id.**

**Commonwealth v. Bedford**, 50 A.3d 707, 712-713 (Pa.Super. 2012), **appeal denied**, 57 A.3d 65 (Pa. 2012).

Instantly, Michael Mitchell, a Commonwealth witness, was called to attempt to corroborate the fact that appellant carried firearms around his house. Mitchell testified that he had once seen appellant answer his door

while holding a gun. (Notes of testimony, 1/19/12 at 93.) However, during his testimony, it became clear that Mitchell only had secondhand knowledge of that event. (*Id.* at 94.) Defense counsel immediately objected, and the trial court sustained appellant's objection, denied his motion for a mistrial, and gave an immediate cautionary instruction to disregard the testimony.

> Ladies and gentleman of the jury, the witness cannot testify as to things that people may have relayed to him. You are to -- just as I told you in the beginning, sometimes things would come in and I would direct you to disregard them. And you may -- you must do so.
>
> And so in this situation, since the witness did not see the incident that occurred two years prior personally, he may not relay to you what was told to him because that person is not here for purposes of cross-examination. And you are not to consider it, nor may counsel argue it to you.
>
> So you must act as if -- you must follow my instructions, disregard it, not consider it. Any questions or answers given in regard to that, please cross it out of your notebooks.

*Id.* at 94-95.

Appellant's bald claims of prejudice do not afford him relief. The court sustained appellant's objection to Mitchell's hearsay testimony and also unequivocally told the jury to disregard it. We can presume the jury followed the court's instructions, and appellant is unable to show otherwise. *See Commonwealth v. Mollett*, 5 A.3d 291 (Pa.Super. 2010), *appeal denied*, 14 A.3d 826 (Pa. 2011) (stating jury is presumed to follow court's instructions). Appellant admittedly did not object during trial to the court's

instruction. (Appellant's brief at 51; *see* notes of testimony, 1/19/12 at 94-95.) We agree with the trial court's determination that appellant was not entitled to mistrial, and any prejudice to appellant was effectively cured by the court's immediate cautionary instructions.

The final claim presented is whether Linda Pappert's testimony that appellant stated he "wouldn't think twice about using [a hollow-point bullet] on a person," and had once threatened to do so to the victim's boyfriend, was inadmissible.[5] That evidence, according to appellant, violated the general rule barring proof of prior criminality.[6]

> Our standard of review for considering whether a ruling on the admissibility of evidence was proper is well settled:
>
>> Admission of evidence is a matter within the sound discretion of the trial court, and will not be reversed absent a showing that the trial court clearly abused its discretion. Not merely an error in judgment, an abuse of discretion occurs when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence on record.

---

[5] We note the trial court did not address this issue in its Rule 1925(a) opinion.

[6] We also note our disagreement with the Commonwealth that this claim is waived for purposes of appeal. The statement was addressed in a pretrial ruling. (*See* notes of testimony, 1/17/12 at 156-157.)

***Commonwealth v. Handfield***, 34 A.3d 187, 207-208 (Pa.Super. 2011), quoting ***Commonwealth v. Cain***, 29 A.3d 3, 6 (Pa.Super. 2011) (quotation omitted).

Appellant's argument ignores, however, that such evidence may be admitted if it is relevant to prove something other than a defendant's propensity for committing crimes. ***E.g.***, ***Commonwealth v. Claypool***, 495 A.2d 176 (Pa. 1985). The evidence here complained of by the appellant was certainly relevant to prove motive, malice, or ill-will. Since the challenged evidence was clearly admissible under an exception to the general prohibition, no relief is due.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>11/25/2014</u>