J-S44016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JAMES MCQUEEN | : | No. 283 EDA 2024 |

Appeal from the Order Entered January 8, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003799-2011

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY MURRAY, J.:                    **FILED DECEMBER 18, 2024**

The Commonwealth of Pennsylvania appeals from the order granting the petition James McQueen (defendant) filed pursuant to the Post Conviction Relief Act (PCRA)[1] and ordering a new trial. The Commonwealth argues the PCRA court erred in granting defendant relief on claims of his trial counsel's ineffectiveness. After careful review, we agree and, thus, reverse the PCRA court's order.

A detailed factual history is unnecessary for disposition of this appeal.[2] In short, the Commonwealth presented evidence that defendant repeatedly sexually abused his minor step-daughter, J.M., over several years. ***See***

_____

[1] ***See*** 42 Pa.C.S.A. §§ 9541-9546.

[2] This Court thoroughly explained the facts and trial testimony in connection with defendant's direct appeal. ***See Commonwealth v. McQueen***, 116 A.3d 694, 12 EDA 2014 (Pa. Super. 2014) (unpublished memorandum at 1-11).

*McQueen*, 116 A.3d 694 (unpublished memorandum at 1-7). Several incidents occurred when J.M., her mother – Alethia McQueen (Alethia), and defendant – Alethia's husband, resided together in the state of New Jersey. *Id.* (unpublished memorandum at 2-3). After the family moved to Philadelphia when J.M. was ten years old, defendant continued sexually abusing her. *Id.* (unpublished memorandum at 3-6).

J.M. reported defendant's crimes to the authorities. As a result, the Commonwealth charged him with numerous offenses in April 2011. Before trial, on January 20, 2012, the Commonwealth filed notice of its intent to introduce evidence of defendant's prior, uncharged bad acts. Specifically, the the Commonwealth sought to introduce, pursuant to Pennsylvania Rule of Evidence 404(b),[3] evidence of defendant's sexual abuse of J.M. in New Jersey (prior bad acts evidence). The Commonwealth alleged the prior bad acts

---

[3] Rule 404(b) provides that generally, "[e]vidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(b)(1). "However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident." *Commonwealth v. Sherwood*, 982 A.2d 483, 497 (Pa. 2009) (citing Pa.R.E. 404(b)(2)). Moreover, "[o]ur Supreme Court has consistently recognized that admission of distinct crimes may be proper where it is part of the history or natural development of the case, *i.e.*, the *res gestae* exception." *Commonwealth v. Brown*, 52 A.3d 320, 326 (Pa. Super. 2012) (citations omitted); *see also Commonwealth v. Dillon*, 925 A.2d 131, 139 (Pa. 2007) (where defendant faced charges for sexual crimes against a minor, holding evidence of defendant's prior bad acts was "relevant for *res gestae* purposes, *i.e.*, to explain the events surrounding the sexual assaults, and resulting prosecution so that the case presented to the jury did not appear in a vacuum." (footnote omitted)).

evidence "will provide the fact-finder with a full and complete picture of the defendant's sexual abuse of [J.M.]." Notice, 1/20/12.

The matter proceeded to a jury trial in September 2012.[4] Defendant was represented by private counsel, Arshen Kashkashian, Esquire (defense counsel). At trial, the trial court admitted the prior bad acts evidence,[5] without objection from defense counsel. The Commonwealth presented testimony from numerous witnesses, including thirteen-year-old J.M. J.M. testified to defendant's repeated sexual crimes against her in Pennsylvania and New Jersey. *See* N.T., 9/20/12, at 51-62. Defendant testified in his own defense, denied his guilt on all charges, and asserted the abuse accusations were fabricated and motivated by Alethia's desire for retribution for defendant's marital infidelity. *See* N.T., 9/24/12, at 127-39.

Following the close of evidence, the trial court issued a cautionary instruction to the jury regarding the prior bad acts evidence:

> You have heard evidence tending to prove that the defendant was guilty of offenses to which he is not on trial. I am speaking of the testimony to the effect that the defendant had on multiple occasions[,] at various locations in New Jersey[,] engaged in vaginal, oral, and anal sexual intercourse with the complainant, [J.M.].

---

[4] The Honorable Nina Wright Padilla presided at trial. Judge Padilla also presided over the subsequent PCRA proceedings, and issued the order granting defendant's PCRA petition.

[5] Though it is undisputed the trial court ruled the prior bad acts evidence was admissible, the ruling is not explicitly detailed of record. *See* N.T. (PCRA hearing), 12/9/20, at 19 (the prosecutor clarifying that "there was a discussion prior to trial at sidebar about the [prior bad acts evidence], and [the discussion] wasn't placed on the record[.]").

This evidence is before you for a limited purpose, that is, for the purpose of tending to show the defendant's common scheme or plan and to show this was a pattern of the defendant[], also to rebut any defense of fabrication. This evidence must not be considered by you in any way other than for that purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which [you] might be inclined to infer guilt.

N.T., 9/24/12, at 40.

Thereafter, the jury retired for multiple days of deliberations. ***See id.*** at 57, 65-69; ***see also generally*** N.T., 9/25/12, and N.T., 9/26/12. On the third and final day of deliberations, the trial court instructed the jury concerning 1) what would occur should the jury become deadlocked; and 2) the necessity for a unanimous verdict. ***See*** N.T., 9/26/12, at 19-21. The court then directed the jury to further deliberate. ***Id.*** at 20.

As the jury continued its deliberations, the prosecutor notified the trial court that the Commonwealth had extended a second plea offer[6] to defendant (post-trial plea offer):

[Commonwealth]: Your Honor, if the jurors do hang despite our best efforts, there were two various [plea] offers that I –

THE COURT: I'm sorry?

[Commonwealth]: You would just have to formally colloquy [defendant] if that becomes necessary.

_____

[6] Prior to trial, the Commonwealth had extended a plea offer (original plea offer) to defendant, which he rejected. ***See***, ***e.g.***, N.T. (PCRA evidentiary hearing), 10/30/19, at 47 (defendant testifying he "turned [the original plea offer] down summarily because of my innocence.").

THE COURT: Colloquy –

[Commonwealth]: About the rejection of the offer.

*Id.* at 21-22.[7]  Immediately thereafter, the jury found defendant guilty of one count each of rape, involuntary deviate sexual intercourse, unlawful contact with a minor, endangering the welfare of a child, indecent assault, and corruption of minors.[8]  *Id.* at 22-25.  Notably, however, the trial court did not colloquy defendant regarding the Commonwealth's post-trial plea offer.  *See*, *e.g.*, N.T., 8/7/19, at 55; N.T., 10/30/19, at 48.

On January 8, 2014, following the completion of a pre-sentence investigation report, the trial court imposed an aggregate sentence of 32½ to 65 years' imprisonment.[9]  Defendant continued to assert his innocence at sentencing.  *See* N.T., 1/8/14, at 23, 35-36, 38.

On January 18, 2013, defendant filed a post-sentence motion through new counsel, challenging the discretionary aspects of his sentence and the evidentiary sufficiency to sustain his convictions.  The motion was denied by operation of law on May 21, 2013.

_____

[7] Though the record is silent regarding the precise details of the post-trial plea offer, it is undisputed the offer was made.  *See* Commonwealth's Brief at 20-23; Defendant's Brief at 3-7.  As we discuss *infra*, defendant and defense counsel gave contradicting accounts concerning whether defense counsel conveyed the post-trial plea offer to defendant.

[8] 18 Pa.C.S.A. §§ 3121(a)(1), 3123(a)(1), 6318(a)(1), 4304(a)(1), 3126(a)(7), and 6301(a)(1)(i).

[9] The trial court did not designate defendant as a sexually violent predator.

Defendant timely filed a direct appeal challenging the discretionary aspects of his sentence and an evidentiary ruling by the trial court. This Court affirmed defendant's judgment of sentence on December 22, 2014. *See generally McQueen*, 116 A.3d 694. Defendant did not petition the Pennsylvania Supreme Court for allowance of appeal.

On December 22, 2015, within one year of defendant's judgment of sentence becoming final, defendant timely filed the instant PCRA petition, his first, through Lawrence Bozzelli, Esquire (PCRA counsel).[10] *See* 42 Pa.C.S.A. § 9545(b)(1) (PCRA's one-year jurisdictional time-bar). Defendant alleged several claims of defense counsel's ineffectiveness, as well as after discovered evidence. *See* PCRA Petition, 12/22/15, at 6-15. Two of the ineffectiveness claims concerned defense counsel's purported failures to (1) object to admission of the prior bad acts evidence; and (2) communicate the post-trial plea offer to defendant. *See id.* at 11-12, 13-14.

On November 28, 2016, the Commonwealth filed a motion to dismiss defendant's PCRA petition. On December 6, 2016, defendant filed an

---

[10] For purposes of the PCRA, "a judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545(b)(3). Here, defendant's judgment of sentence became final on January 21, 2015, after the expiration of the 30-day period to file a petition for allowance of appeal with the Pennsylvania Supreme Court. *See id.*; *see also* Pa.R.A.P. 1113 (providing that a petition for allowance of appeal must be filed within thirty days after the entry of this Court's order).

unopposed motion to file an amended PCRA petition, which the PCRA court granted on May 19, 2017. Defendant did not file an amended petition.

On August 7, 2019, and October 30, 2019, the PCRA court held an evidentiary hearing on defendant's PCRA petition, wherein defense counsel and defendant testified. Defense counsel and defendant presented conflicting testimony concerning the post-trial plea offer. Defense counsel testified he communicated the post-trial plea offer to defendant and defendant refused it. N.T., 8/7/19, at 55. ***But see also id.*** (defense counsel acknowledging defendant was never colloquied by the trial court regarding the post-trial plea offer). Defendant, contrarily, testified defense counsel never communicated the post-trial plea offer to him, and defendant first learned of it after sentencing. N.T., 10/30/19, at 47. ***But see also id.*** at 47-48 (defendant testifying he could not say whether or not he would have accepted the post-trial plea offer had he known of it).

On December 9, 2020, the PCRA court considered oral argument from the parties on the PCRA petition.

Approximately three years elapsed with no further action on the case. On January 8, 2024, over eight years after the filing of defendant's PCRA petition,[11] the PCRA court issued its order, and accompanying opinion, granting the petition and ordering a new trial based on defense counsel's

---

[11] The PCRA court never detailed the reason for this inexplicably long delay.

ineffectiveness.[12] The next day, the Commonwealth timely filed a notice of appeal.[13]

On February 5, 2024, defendant filed a motion for bail. On February 28, 2024, the PCRA court held a status hearing, at the conclusion of which it granted the motion for bail, with certain restrictions. ***See*** N.T., 2/28/24, at 17-18, 20-21.

On appeal, the Commonwealth presents two issues for our review:

1. Did the PCRA court err in finding defense counsel ineffective for not successfully challenging the Commonwealth's introduction of prior bad acts evidence to the extent the prior bad acts were committed in New Jersey[,] when (a) [defense] counsel cannot be deemed ineffective for not raising a novel (and meritless) argument that otherwise-admissible prior bad acts evidence is somehow inadmissible unless the prior bad acts were committed in Pennsylvania; (b) the evidence was properly admissible under Pa.R.E. 404(b); and (c) the [trial] court gave an appropriate limiting instruction?

2. Did the PCRA court err in finding defense counsel ineffective for not ensuring that the trial court record memorialized that [defense] counsel had conveyed and that defendant had rejected [the post-trial] plea offer, when (a) defense counsel testified during the PCRA proceedings that he specifically recalled conveying the [post-trial] plea offer in question and

---

[12] Peculiarly, on January 4, 2023, one year before the PCRA court's grant of defendant's PCRA petition, the court issued a Pennsylvania Rule of Criminal Procedure 907 notice (907 Notice) of intent to dismiss the petition without an evidentiary hearing. The 907 Notice stated, without elaboration, that defendant's claims "are without merit." 907 Notice, 1/4/23. Defendant did not respond to the 907 Notice.

[13] The PCRA court did not order the Commonwealth to file a concise statement of errors complained of on appeal under Pennsylvania Rule of Appellate Procedure 1925(b), nor did the court file an opinion under Rule 1925(a). The Commonwealth did not file a Rule 1925(b) statement.

defendant's rejection of it; (b) the PCRA court did not find that [defense] counsel actually failed to convey the [post-trial] plea offer; and (c) defendant did not testify or present other evidence (as the postconviction petitioner) that he would have accepted the offer and pleaded guilty but for [defense] counsel's allegedly deficient performance?

Commonwealth Brief at 4 (issues reordered).

"Our standard of review of the PCRA court's grant of relief is clear: we examine whether the court's findings are supported by the record and whether its conclusions of law are free from legal error." *Commonwealth v. Williams*, 105 A.3d 1234, 1239 (Pa. 2014) (citation omitted).

We view the record in the light most favorable to the prevailing party in the PCRA court. We are bound by any credibility determinations made by the PCRA court where they are supported by the record. However, we review the PCRA court's legal conclusions *de novo*.

*Commonwealth v. Staton*, 184 A.3d 949, 954 (Pa. 2018) (internal citations and quotation marks omitted).

The Commonwealth's issues implicate defendant's claims of defense counsel's ineffectiveness. In order to be eligible for PCRA relief, a petitioner must plead and prove by a preponderance of the evidence that his conviction or sentence arose from one or more of the errors enumerated in Section 9543(a)(2) of the PCRA. *See* 42 Pa.C.S.A. § 9543(a)(2). These errors include ineffective assistance of counsel. *Id.* § 9543(a)(2)(ii).

Pennsylvania law presumes counsel is effective; the PCRA petitioner bears the burden of proving otherwise. *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018); *see also Commonwealth v. Lesko*, 15 A.3d 345, 380

- 9 -

(Pa. 2011) ("When evaluating ineffectiveness claims, judicial scrutiny of counsel's performance must be highly deferential."). In order to establish a claim of ineffectiveness, a PCRA petitioner must plead and prove three prongs:

(1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) he suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability the result of the proceeding would have been different. **Commonwealth v. Chmiel**, 30 A.3d 1111, 1127 (Pa. 2011) (employing ineffective assistance of counsel test from **Commonwealth v. Pierce**, 527 A.2d 973, 975-76 (Pa. 1987)). … Additionally, counsel cannot be deemed ineffective for failing to raise a meritless claim. Finally, because a PCRA petitioner must establish all the **Pierce** prongs to be entitled to relief, we are not required to analyze the elements of an ineffectiveness claim in any specific order; thus, if a claim fails under any required element, we may dismiss the claim on that basis.

**Commonwealth v. Treiber**, 121 A.3d 435, 445 (Pa. 2015) (citations modified); **see also Commonwealth v. Montalvo**, 205 A.3d 274, 286 (Pa. 2019).

Instantly, the Commonwealth first argues that the PCRA court erred in granting relief on defendant's ineffectiveness claim based on defense counsel's failure to object to admission of the prior bad acts evidence. **See** Commonwealth's Brief at 24-30; **see also** Commonwealth's Reply Brief at 4-7. The Commonwealth challenges the following legal ruling by the PCRA court, which we recite, in its entirety, below:

Under Pa.R.E. 404(b)(1), "evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(2) allows the character evidence to be introduced for a purpose other than

- 10 -

conformity, with admissibility of evidence in a criminal case hinging on weighing the probative and prejudicial value of the evidence. When character evidence is admitted for a permitted purpose under Pa.R.E. 404(b), "the party against whom it is offered is entitled, upon request, to a limiting instruction." ***Commonwealth v. Yale***, 249 A.3d 1001, 1020 (Pa. 2021). Encroachment on right [*sic*] to confrontation cannot be avoided by instruction to [the] jury to disregard inadmissible hearsay evidence. ***Bruton v. U.S.***, 391 U.S. 123, 128 (1968).

Here, [defense] counsel did not object to the Commonwealth producing [evidence of defendant's prior bad] acts committed outside the Commonwealth of Pennsylvania. The [prior bad] acts outside the Commonwealth of Pennsylvania were not "any other act[,"] they were choice of law,[14] part of a series of acts according to J.M.'s testimony. They have not been tried and were uncorroborated. Despite limiting instructions [concerning the prior bad acts evidence] by the trial court, this type of prior acts [evidence] was the essence of the charged crimes, in violation of the right of confrontation. ***See Commonwealth v. Hassine***, 490 A.2d 438, 448 (Pa. Super. 1985). Also, the limiting instruction trial counsel given [*sic*] to the jury, produced below:

> []You have heard evidence tending to prove that the defendant was guilty of offenses to which he is not on trial. I am speaking of the testimony to the effect that the defendant had on multiple occasions at various locations in New Jersey engaged in vaginal, oral, and anal sexual intercourse with the complainant, [J.M.]. This evidence is before you for a limited purpose, that is, for the purpose of tending to show the defendant's common

_____

[14] The PCRA court's reference to "choice of law" is misplaced. "'Choice-of-law rules' refers to the precepts used to select which jurisdiction's laws to apply in a lawsuit…." ***Danganan v. Guardian Prot. Servs.***, 179 A.3d 9, 14 n.7 (Pa. 2018) (citation omitted); ***see also Melmark, Inc. v. Schutt by & Through Schutt***, 206 A.3d 1096, 1104 (Pa. 2019) ("Courts conduct a choice-of-law analysis under the choice-of-law rules of the forum state."). Here, as the Commonwealth correctly observes, "'[A]n act of sexual penetration' with a victim under the age of 13 … was and is a serious criminal offense in New Jersey, just as in Pennsylvania." Commonwealth Brief at 28 n.8 (citing N.J. Stat. Ann. § 2C:14-2(a)(1)–(2) (2004) (quotation marks omitted)).

scheme or plan and to show this was a pattern of the defendant's, also to rebut any defense of fabrication. This evidence must not be considered by you in any way other than for that purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which might be inclined to infer guilt.[]

N.T., 9/24/12, at page 33, line 23 to page 35, line 1.

This limiting instruction was[,] in fact, another way of acknowledging the charged crimes. [Defense] counsel had no reasonable basis for not objecting to the introduction of uncorroborated acts. The omissions of [defense] counsel constitute ineffective assistance of counsel.

PCRA Court Opinion, 1/8/24, at 22-23 (footnote added; some citations and capitalization modified).

Instantly, the Commonwealth argues the PCRA court's ruling is legally erroneous and, because the prior bad acts evidence was properly admitted pursuant to Rule 404(b), defense counsel was not ineffective for failing to lodge an objection. *See* Commonwealth's Brief at 25 ("[T]estimony by J.M. regarding **defendant's** previous sexual assaults **of her**—whether in New Jersey, Pennsylvania, or anywhere else—was plainly relevant and admissible for proper purposes; there would have been no sound basis [for defense counsel] to argue otherwise." (emphasis in original; footnote omitted)). According to the Commonwealth,

[i]n rape and sexual assault cases like this one, the Supreme Court and this Court have repeatedly recognized that evidence of the defendant's prior assaults and abuse is admissible for proper purposes, *e.g.*, to show common plan or scheme or lack of mistake. It is also properly admissible "for *res gestae* purposes, *i.e.*, to explain the events surrounding the sexual assaults, and

resulting prosecution so that the case presented to the jury did not appear in a vacuum." **Dillon**, 925 A.2d at 139 (footnote omitted).

Commonwealth's Brief at 26 (citation modified). The Commonwealth additionally cites **Commonwealth v. Lomax**, 8 A.3d 1264 (Pa. Super. 2010), wherein this Court stated, "prior sexual misconduct with the victim is admissible 'to show a passion or propensity for illicit sexual relations with the **particular person** concerned in the crime on trial.'" Commonwealth's Brief at 25 (quoting **Lomax**, 8 A.3d at 1267 (citation omitted; emphasis in **Lomax**)).

> The Commonwealth challenges the PCRA court's
>
> inexplicable determination that [defense] counsel was ineffective for not contending that testimony about [defendant's] own prior sexual abuse of the same victim in New Jersey was inadmissible because those acts occurred in New Jersey and had "not been tried and were uncorroborated[.]"

Commonwealth's Reply Brief at 4 (quoting PCRA Court Opinion, 1/8/24, at 23).

Finally, the Commonwealth contends the PCRA court "also inexplicably failed to address the fundamental requirement that prejudice be shown." Commonwealth's Reply Brief at 5. The Commonwealth points out the trial court gave the jury a cautionary instruction concerning the limited purpose for which it could consider the prior bad acts evidence. **Id.**; **see also** N.T., 9/24/12, at 40.

Defendant counters the PCRA court properly granted relief on his ineffectiveness claim based on trial counsel's failure to object to the prior bad acts evidence. *See* Defendant's Brief at 7-10. Defendant emphasizes he "was not charged with, and therefore never convicted of, … crimes" related to J.M.'s claim of defendant's sexual assaults committed in New Jersey. *Id.* at 7. According to defendant, the trial court "would have been within [its] authority to exclude the New Jersey allegations due to unfair prejudice or presenting needless cumulative evidence." *Id.* at 9; *see also* Pa.R.E. 404(b)(2). Defendant claims defense counsel "had no legitimate basis not to object" to admission of the prior bad acts evidence. *Id.* at 10. Defendant further contends defense counsel's omission unduly prejudiced him. *Id.* ("[T]he introduction of [the prior bad acts evidence] allowed for the introduction of additional, uncorroborated testimony from [J.M.] to which [defendant] could not rebut.").

> When we review a trial court's ruling on admission of evidence, we must acknowledge that decisions on admissibility are within the sound discretion of the trial court and will not be overturned absent an abuse of discretion or misapplication of law. In addition, for a ruling on evidence to constitute reversible error, it must have been harmful or prejudicial to the complaining party. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias[,] or ill-will, as shown by the evidence or the record, discretion is abused.

*Commonwealth v. Jackson*, 283 A.3d 814, 817 (Pa. Super. 2022) (citation omitted).

As discussed above, pursuant to Rule of Evidence 404(b), evidence of prior bad acts can be admissible to show, *inter alia*, a common plan, scheme, and/or *res gestae*, where the probative value of such evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2); **Dillon**, 925 A.2d at 139, 141. "Additionally, when weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect of the proffered evidence." **Dillon**, 925 A.2d at 141.

Moreover,

[i]n a case involving a challenge to the admission of evidence of a prior sexual act, this Court has stated:

In general, evidence of other wrongful conduct not charged in the information on which the defendant is being tried is inadmissible at trial except in certain limited circumstances. One such exception arises in the prosecution of sexual offenses. **Evidence of prior sexual relations between defendant and his or her victim is admissible to show a passion or propensity for illicit sexual relations with the victim.** This exception is limited, however. The evidence is admissible only when the prior act involves the same victim and the two acts are sufficiently connected to suggest a continuing course of conduct. The admissibility of the evidence is not affected by the fact that the prior incidents occurred outside of the statute of limitations.

**Commonwealth v. Knowles**, 637 A.2d 331, 333 (Pa. Super. 1994) [(emphasis added)]…. This "lustful disposition" exception to the general rule against the admission of evidence of prior or subsequent bad acts has been consistently recognized by our Supreme Court for more than a century. **See**, **e.g.**, **Commonwealth v. Bell**, 31 A. 123 (Pa. 1895) (stating "in prosecutions for adultery or for illicit sexual intercourse of any class, evidence is admissible of sexual acts between the parties prior to, or when indicating continuousness of illicit relations, even

- 15 -

subsequent to the act specifically under trial") …; ***Commonwealth v. Dunkle***, 602 A.2d 830, 839 (Pa. 1992) (determining that evidence of prior sexual misconduct is admissible if it shows a passion or propensity for illicit sexual relations of the defendant towards the victim).

***Commonwealth v. Wattley***, 880 A.2d 682, 686-87 (Pa. Super. 2005) (footnote and emphasis omitted; citations modified).

Our decision in **Knowles** is analogous and instructive. There, a jury convicted Knowles of sexually abusing his minor step-granddaughter (the victim). **Knowles**, 637 A.2d at 332. Knowles appealed, claiming that the trial court erred in admitting evidence of his prior bad acts, in the form of his prior, uncharged sexual assaults of the victim committed in the state of Texas. **Id.** at 333-34. We concluded that the evidence was admissible and "relevant to show that [Knowles] had a continuing passion for illicit sexual contact with [the victim,] and acted on that passion when the opportunity arose." **Id.** at 333 (citations omitted); **see also id.** ("The prior conduct need not be precisely the same conduct as that giving rise to the criminal charges." (citation omitted)).

Instantly, a review of J.M.'s trial testimony reveals defendant's sexual assaults of J.M. in New Jersey, and defendant's subsequent, substantially similar sexual assaults of J.M. in Pennsylvania, were "sufficiently connected to suggest a continuing course of conduct." **Id.** at 333; **see also McQueen**, 116 A.3d 694 (unpublished memorandum at 2-6 (detailing factual history)). Accordingly, contrary to the PCRA court's determination, we conclude the prior

bad acts evidence was admissible. **See Knowles**, 637 A.2d at 333-34; **Dillon**, 925 A.2d at 139 (holding evidence of appellant's prior abuse of the minor sexual assault victim's family members was properly admitted under Rule 404(b) for *res gestae* purposes).

Moreover, we are persuaded by the Commonwealth's argument that

[t]o the extent the [PCRA] court reasoned that the prior bad acts "have not been tried and were uncorroborated" [PCRA Court Opinion, 1/8/24, at 23], that reasoning was [] misguided as a matter of law. Prior bad "acts" need not have "been tried" or have resulted in a conviction—or even have been charged—and admissibility does not depend on extrinsic corroboration of the victim's testimony.

Commonwealth's Brief at 27-28 (footnote omitted); **id.** at 27 (correctly arguing there is no "'instate' prerequisite for prior bad acts evidence, and [defense] counsel certainly could not be considered ineffective for not arguing against admissibility on such a dubious legal theory."); **see also Commonwealth v. Cramer**, 195 A.3d 594, 602 (Pa. Super. 2018) ("[T]he uncorroborated testimony of the complaining witness is sufficient to convict a defendant of sexual offenses." (citation omitted)).

Further, as explained above, the trial court properly gave the jury a cautionary instruction with regard to the limited purpose for which it could consider the prior bad acts evidence. **See** N.T., 9/24/12, at 40; **see also Dillon**, 925 A.2d at 141 ("[W]hen weighing the potential for prejudice, a trial court may consider how a cautionary jury instruction might ameliorate the prejudicial effect" of Rule 404(b) evidence); **Commonwealth v. Speight**,

854 A.2d 450, 458 (Pa. 2004) ("It is presumed the jury follows [a trial] court's instructions."). Contrary to the PCRA court's implication in its opinion, 1) the cautionary instruction was not insufficient or defective; and 2) no violation of defendant's Confrontation Clause rights occurred, as J.M. testified at trial about defendant's New Jersey assaults, and was cross-examined by defense counsel. **See Crawford v. Washington**, 541 U.S. 36, 53-54 (2004) (holding the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination."). **Cf.** PCRA Court Opinion, 1/8/24, at 22 ("Encroachment on right [*sic*] to confrontation cannot be avoided by instruction to [the] jury to disregard inadmissible hearsay evidence.").

Accordingly, because the prior bad acts evidence was properly admitted at trial, defense counsel cannot be deemed ineffective for not objecting to admission of this evidence. **See Treiber**, 121 A.3d at 445 ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim."). We thus conclude the PCRA court erred as a matter of law in granting defendant a new trial based on his ineffectiveness claim relative to the prior bad acts evidence.

We next address the Commonwealth's second issue, wherein it claims the PCRA court erred in granting relief based on defense counsel's failure to communicate the post-trial plea offer to defendant. **See** Commonwealth's Brief at 20-23; **see also** Commonwealth's Reply Brief at 1-3.

To place the Commonwealth's argument in context, we recite the PCRA

court's complete analysis of this issue stated in its opinion, followed by the

relevant testimony at the PCRA hearings. The PCRA court's opinion reasoned:

> In this case, there were two various pleas offered. [The original plea offer occurred] before the trial, which was uncontested. The other in dispute was the [post-trial] plea offer…. [Defense counsel] admitted [at the PCRA evidentiary hearing] that there was no colloquy on the record that [defendant] rejected the [post-trial plea] offer:
>
>> [Q (PCRA counsel)]: [Defendant], according to your recollection, rejected the [post-trial plea] offer?
>>
>> A [(defense counsel)]: He did.
>>
>> Q: Okay. When you came back in did you place that on the record that [defendant] had rejected the offer?
>>
>> A: No, I did not.[]
>
> N.T., 8/7/19, at page 19, line 19.
>
> [Defendant] testified [at the PCRA evidentiary hearing] that "[defense counsel] never approached me about a plea offer after the trial, during the trial. I never knew anything about [the post-trial plea offer] until a random conversation with my mother months later that a possible plea bargain or a plea deal had been offered to [defense counsel]." N.T., 10/30/19, at page 46, line 15.[15] **There was no evidence on the record indicating that the [post-trial] plea offer was communicated.** The omissions of [defense] counsel constitute ineffective assistance of counsel.

---

[15] At the October 30, 2019, PCRA evidentiary hearing, defendant, his mother Charlene McQueen (Mrs. McQueen), and other family members of defendant testified. Mrs. McQueen testified she retained defense counsel to represent defendant at trial. N.T., 10/30/19, at 8.

PCRA Court Opinion, 1/8/24, at 25 (emphasis and footnote added; citations modified).

At the August 7, 2019, PCRA evidentiary hearing, PCRA counsel questioned defense counsel concerning the post-trial plea offer as follows:

> Q [(PCRA counsel):] … Do you recall, at some point in time -- I think towards the end of the trial, … the prosecutor reaching out to you with a plea offer for [defendant]?
>
> A [(Defense counsel):] Yes, I do.
>
> Q: Okay.  Do you recall … what the plea offer was?
>
> A: I don't remember exactly.  I know there were two [plea] offers in the case; [the original plea offer] was sort of in the beginning [of the case] … and [it contemplated a] minimum [sentence of] five years [in prison]…, and the [post-trial plea offer contemplated a prison sentence that] was a little more than that, but [the post-trial plea offer came] at the very end of the trial.  And **I explained it to [defendant]**.
>
> I met [defendant] out in the corridor …, and **we talked about the fact that [the post-trial plea] offer had been made.  [Defendant] was adamant that he was innocent and he was not going to take [a plea] offer.**
>
> Q: Okay.
>
> A: And I communicated that to the district attorney.

N.T., 8/7/19, at 17-18 (emphasis added; some punctuation modified).  ***But see also id.*** at 19 (defense counsel confirming he did not "place [] on the record that [defendant] had rejected" the post-trial plea offer).

The Commonwealth then cross-examined defense counsel as follows:

> Q [(Commonwealth):] The defendant rejected [the original plea] offer of [an aggregate prison sentence of] eight to twenty years; is that right?

A [(Defense counsel):] That's correct.

* * *

Q: And [defendant] rejected [the original plea offer of] eight to twenty years because he said I'm innocent; is that right?

A: That's correct.

* * *

Q: And then you said that [the] second time that there was [the post-trial plea] offer … was just before the jury came back with a verdict; is that right?

A: That's correct.

* * *

Q: Okay. And [the prosecutor] conveyed [the post-trial plea] offer because both [parties] … were worried about a hung jury; is that right?

A: That's correct.

* * *

Q: And then you went -- **did you talk to the defendant … about the** [**post-trial plea**] **offer?**

A: **Yes, I did.**

Q: **And you came right back to tell** [**the prosecutor that defendant**] **doesn't want to take any offers?**

A: **Correct.**

Q: Okay. And, unfortunately, [defendant] was not colloquied on the record about [the post-trial plea offer]; is that correct?

A: That's right.

Q: Okay. Do you remember why he was not colloquied on the record for that offer?

A: I don't think we even had a chance to do [a colloquy]. The jury came right in [with its verdict].

*Id.* at 52-55 (emphasis added; some punctuation modified).

At the October 30, 2019, PCRA evidentiary hearing, the following exchange occurred during PCRA counsel's direct examination of defendant regarding the post-trial plea offer:

Q [(PCRA counsel):] … I want to turn your attention to the end of the trial. I think we had asked [defense counsel] some questions about [the post-trial plea offer at the] last [PCRA hearing].

A [(Defendant):] Yes.

Q: Did [defense counsel] ever approach you when the trial was over about a plea offer communicated by the prosecutor to him?

A: [Defense counsel] never approached me about a plea offer after the trial, during the trial. I never knew anything about [the post-trial plea offer] until a random conversation with [Mrs. McQueen] months [after trial] that a possible plea bargain or a plea deal had been offered to [defense counsel]. …

Q: So if there was any testimony by [defense counsel] that he had met you in one of these little booths adjacent to the courtroom[, and informed defendant of the post-trial plea offer] –

A: That would be untrue.

* * *

Q: Okay. Would you have remembered if [defense counsel] had communicated [a plea] offer to you?

A: Yes, I would have.

Q: …[Y]our testimony is [defense counsel] didn't talk to you at all about any [post-trial] plea offer?

- 22 -

A: No. ...

* * *

Q: Did [defense counsel] talk to you about any pleas prior to the trial?

A: Prior to the trial[, defense counsel] mentioned that there was [the original] plea [offer]. **I turned it down summarily because of my innocence.** … [A]fter the trial, I never knew anything about a plea offer.

N.T., 10/30/19, at 46–47 (emphasis added; some punctuation modified).

On cross-examination of defendant, the following transpired:

Q [(Commonwealth):] Sir, so **are you saying today that you would have taken the** [**post-trial plea**] **offer?**

A [(Defendant):] **I didn't say that.** But had I known about the [post-trial plea] offer, the way the trial was going, I would have been a fool not to have considered it. But as I understand, it was [defense counsel's] responsibility, if the [post-trial plea] offer was given to him, he should have relayed that message to me, and it was not relayed.

Q: So you would have admitted in front of this court –

A: That's not what I'm saying, ma'am.

*Id.* at 47-48 (emphasis added; some punctuation modified).

During recross-examination of defendant, the following exchange occurred:

Q [(Commonwealth):] Even at sentencing[,] you still told this court that you were innocent?

A [(Defendant)]: Yes.

Q: And today as you sit here, are you telling this court that you're innocent?

- 23 -

A: Yes, ma'am.

\* \* \*

Q: **If there was** [**a plea**] **offer on the table**, **…** **would you have taken it?**

A: **I can't really speak in hindsight.** I mean, that was seven years ago. We're at a different place right now. I've experienced different things right now. So **I don't know what I would have done** seven years ago.

*Id.* at 49-50 (emphasis added; capitalization and some punctuation modified).

Instantly, the Commonwealth argues the PCRA court erred in granting relief on defendant's ineffectiveness claim relative to the post-trial plea offer. *See* Commonwealth's Brief at 20-23. The Commonwealth points out defense counsel's testimony that he communicated the post-trial plea offer to defendant, who refused it. *Id.* at 20; *see also* N.T., 8/7/19, at 18, 55.

According to the Commonwealth, the PCRA court's

written opinion reveals[] the [] court did not purport to find that [defense] counsel actually failed to convey the [post-trial] plea offer. Rather, the PCRA court, in its three-paragraph-long discussion of this claim, focused solely on [defense] counsel's "admi[ssion] that there was no colloquy on the record that [defendant] rejected the offer." [PCRA Court Opinion, 1/8/24, at 25.] Similarly, the [PCRA] court's reference to an absence of "evidence on the record indicating that the plea offer was communicated" [*id.*], could only logically have meant "the record" at trial[. Defense] counsel's specific and detailed testimony at the PCRA hearing was unquestionably "evidence on the record … that the [post-trial] plea offer was communicated." [*Id.*]

Commonwealth's Reply Brief at 1 (emphasis omitted); *see also*

Commonwealth's Brief at 22 (asserting a "defendant is not denied effective

- 24 -

assistance … simply because the trial record itself does not reflect whether a plea offer was conveyed." (emphasis omitted)).

The Commonwealth additionally emphasizes defendant's rejection of the original plea offer, Commonwealth's Brief at 20, and claims he failed to prove prejudice. *Id.* at 22-23. Specifically, the Commonwealth argues defendant failed to present any evidence that he would have accepted the post-trial plea offer had defense counsel conveyed it to defendant. *Id.* at 23 ("The record here offers no reason to conclude that defendant would have been willing to plead guilty to the charged conduct—indeed it confirms just the opposite."); *see also* Commonwealth's Reply Brief at 3 n.2 (emphasizing defendant's PCRA hearing testimony that he "didn't say that" he would have accepted the post-trial plea offer had defense counsel communicated it).

Defendant counters the PCRA court properly granted relief on his claim of defense counsel's ineffectiveness for failing to convey the post-trial plea offer. *See* Defendant's Brief at 3-7. According to defendant,

> [t]he PCRA court's statement [in its opinion] that "there was no evidence on the record indicating that the [post-trial] plea offer was communicated[,]" [PCRA Court Opinion, 1/8/24, at 25,] means that there is no corroborating evidence to support [defense] counsel's assertion [that he communicated the post-trial plea offer to defendant]. Clearly, the PCRA court made a credibility determination after the evidentiary hearing and believed the testimony of [defendant] rather than that of [defense] counsel.

Defendant's Brief at 4-5. Defendant points out his testimony at the PCRA hearing that "he would 'have been a fool not to consider' taking the [post-trial

plea] offer." *Id.* at 6 (citing N.T., 10/30/19, at 48). Defendant further contends defense counsel's omission prejudiced him. *Id.* ("[Defendant] was prejudiced because the [post-trial plea] offer would have been certainly lower than the 32 – 65 years [in prison] that [defendant] was sentenced to….").

In general, a defense attorney "has a duty to communicate plea bargains to his client, as well as to explain the advantages and disadvantages of the offer." *Commonwealth v. Marinez*, 777 A.2d 1121, 1124 (Pa. Super. 2001) (citation omitted); *see also Commonwealth v. Napper*, 385 A.2d 521, 524 (Pa. Super. 1978) (*en banc*). To establish that trial counsel was ineffective for failing to convey a plea offer, a petitioner must plead and prove four prongs: "(1) an offer for a plea was made; (2) trial counsel failed to inform [petitioner] of such offer; (3) trial counsel had no reasonable basis for failing to inform [petitioner] of the plea offer; and (4) [**petitioner**] **was prejudiced thereby**." *Commonwealth v. Chazin*, 873 A.2d 732, 735 (Pa. Super. 2005) (citation omitted; emphasis added).

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, [**a**] **defendant**[] **must demonstrate a reasonable probability they would have accepted the earlier plea offer** had they been afforded effective assistance of counsel.

*Missouri v. Frye*, 566 U.S. 134, 147 (2012) (emphasis added); *see also Commonwealth v. Rizor*, 304 A.3d 1034, 1054 (Pa. 2023) ("In the context of a plea offer rejected by a defendant, the defendant must show the outcome

of the plea process would have been different with competent advice." (citation and quotation marks omitted)).

Here, as detailed above, the record belies the PCRA court's determination that "[t]here was no evidence on the record indicating that the [post-trial] plea offer was communicated" to defendant. PCRA Court Opinion, 1/8/24, at 25. Defense counsel unambiguously and repeatedly testified that he conveyed the post-trial plea offer to defendant, who refused it based on his "adamant" assertion of innocence. *See* N.T., 8/7/19, at 18, 55. Further, contrary to defendant's argument, the PCRA court made no credibility determination, concerning defendant or defense counsel, regarding communication of the post-trial plea offer. *Cf.* Defendant's Brief at 5.

Moreover, the evidence, even when properly viewed in a light most favorable to defendant, *see Staton*, 184 A.3d at 954, failed to demonstrate prejudice, as defendant presented no evidence that he would have accepted the post-trial plea offer. *See Frye*, 566 U.S. at 147 (holding a petitioner asserting a claim of trial counsel's ineffectiveness in connection with a plea offer "must demonstrate a reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel."). It is undisputed that defendant 1) "summarily" rejected the original plea offer based on his assertion of innocence; and 2) continued to maintain his innocence at sentencing and in collateral proceedings. *See* N.T., 10/30/19, at 47, 49–50. At the PCRA hearing, defendant testified, "I don't know what I

would have done" had he known about the post-trial plea offer. *Id.* at 50; *see also id.* at 48 (defendant testifying he "didn't say that" he would have accepted the post-trial plea offer).

We are guided by our Supreme Court's decision in *Rizor*, 304 A.3d 1034. There, following Rizor's jury conviction of murder and related crimes, Rizor filed a PCRA petition asserting her trial counsel's ineffectiveness in connection with a plea offer communicated to Rizor during a pretrial hearing, which Rizor rejected.[16] *Id.* at 1040. The PCRA court denied relief on Rizor's ineffectiveness claim, finding, *inter alia*, she failed to prove prejudice, *i.e.*, that she would have accepted the plea offer but for trial counsel's deficient advice. *See id.* at 1042-43 (PCRA court finding, "although [Rizor] claims that she was not adequately informed by her trial counsel of the plea offers and the likelihood of prevailing at trial, which the record refutes, at no time [did Rizor] express that she would have accepted a guilty plea, had she been properly advised." (citation omitted)). On appeal, this Court reversed and remanded for an evidentiary hearing, determining Rizor had proved all prongs of the ineffectiveness test. *See id.* at 1043-44. However, our Supreme Court disagreed.

---

[16] Unlike the instant case, in *Rizor*, "the trial court conducted a colloquy regarding [Rizor's] rejection of the plea." *Rizor*, 304 A.3d at 1039 (citation omitted).

The Supreme Court concluded Rizor had failed to meet her burden of proving prejudice to prevail on an ineffectiveness claim. *See id.* at 1058-60. The Supreme Court emphasized Rizor's PCRA hearing testimony "that she would only take a plea offer if there was no chance of acquittal." *Id.* at 1058; *see also id.* at 1059 (noting Rizor's "single statement at the PCRA evidentiary hearing that she would have accepted a plea offer if she had 'no chance[.]'"); *id.* (observing that at the time of the plea offer, "Rizor had a colorable defense at that time, and there existed a chance of success at trial.").

The *Rizor* Court further emphasized 1) "the PCRA court disbelieved Rizor that she would have accepted the plea offer even assuming that the mental health defense was unavailable," *id.* at 1058; and 2) "Rizor provides virtually no argument to demonstrate that she proved that there is a reasonable probability that she would have accepted the plea deal." *Id.* at 1059 (emphasis omitted). Finally, the Court observed that

> Rizor does not cite any authority where a petitioner establishes that there exists a reasonable probability that she would have accepted a plea deal but for counsel's deficient advice absent credible testimony from the petitioner to that effect.

*Id.*

Instantly, defendant presented **no evidence** that he would have accepted the post-trial plea offer. Moreover, the PCRA court never addressed the prejudice prong of the ineffectiveness test. *See* PCRA Court Opinion, 1/8/24, at 25. Accordingly, as defendant failed to prove prejudice, his claim of defense counsel's ineffectiveness fails. *See Frye*, 566 U.S. at 147; *Rizor*,

304 A.3d at 1058-59; *see also Treiber*, 121 A.3d at 445 (if a PCRA petitioner fails to prove any prong of the ineffectiveness test, "we may dismiss the claim on that basis" alone).

Based on the foregoing, we conclude the PCRA court erred as a matter of law in granting defendant a new trial based on defense counsel's ineffectiveness. Thus, we reverse the order granting defendant's PCRA petition.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/18/2024