J-A13022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DOUGLAS EDWARD POOLE | : | |
| | : | |
| Appellant | : | No. 1022 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 12, 2023
In the Court of Common Pleas of Jefferson County
Criminal Division at No(s):  CP-33-CR-0000314-2022

BEFORE:  OLSON, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY SULLIVAN, J.:              **FILED:  November 14, 2025**

Douglas Edward Poole ("Poole") appeals from the judgment of sentence following his conviction by jury for rape by forcible compulsion and related offenses[1] arising from the sexual abuse of his biological daughter, A.P. Following our careful review, we affirm.

The factual history of this case, as gleaned from the trial testimony, and the procedural history of this case is as follows:  Poole's biological daughter, A.P., lived primarily with her mother and siblings following her birth in September 2003.  **See** N.T., 11/21/22, at 36, 41; **see also** 11/22/22, at 6. After Poole and A.P.'s mother divorced, Poole's contact with A.P. was limited to a short time in 2010 to 2011, when he began to pay child support for A.P. During this time, Poole had limited and sporadic visitation on weekends, while

---

[1] **See** 18 Pa.C.S.A. § 3121(a)(1).

A.P. lived in Florida with her mother, half-brother, little cousin, and S.P., her half-sister. *See* N.T., 11/22/22, at 7, 9-10. Poole also lived in Florida at this time. *See id*. at 98. During this limited visitation, Poole sexually abused A.P. by digitally penetrating her, and "humped" her as she laid on the couch. *See* N.T., 11/21/22, at 43-45. A.P. was eight years old at the time. *See id*.

In March 2015, A.P.'s mother died, and A.P. briefly continued living with S.P. until Poole obtained custody of her in 2015. *See* N.T., 11/22/22, at 9-10. Once A.P. moved in with Poole, still in Florida, he continued to abuse A.P. *See* N.T., 11/21/22, at 47. One such instance occurred during an evening when Poole, who was visibly intoxicated, forced A.P. to bend over a work bench and initiated non-consensual vaginal intercourse with her from behind. *See id*. at 48-49. A.P. was twelve years old at the time. *See id*.

Criminal charges unrelated to the facts of this case were brought against Poole in Florida, and he was incarcerated in 2018. *See* Commonwealth's Motion *in Limine*, 11/7/22, at ¶ 2; *see also* N.T., 11/7/22, at 167-72 (the Commonwealth and Poole's counsel agreeing that Poole was incarcerated in Florida which precipitated A.P.'s move to Pennsylvania). As a result of his incarceration, A.P. began living with Poole's girlfriend Peggy Sue ("Peggy Sue").[2] While Poole was unavailable to exercise custody over A.P., she

_____

[2] Since it was unrelated to the current charges, evidence of Poole's incarceration was not presented to the jury due to its potential for causing prejudice.

continued living with different family members of Peggy Sue in Florida, until she was ultimately placed with her aunt, K.P., and uncle, G.P., in Pennsylvania. A.P. resided with K.P. and G.P. from June 2018 through August 2020. *See* N.T., 11/21/22, at 38-39, 172.[3]

After Poole completed his incarceration in Florida, he moved to Punxsutawney, Pennsylvania, and A.P. began living with Poole again. *See id*. at 54-56. Once A.P. moved in with Poole, he continued sexually abusing her again, which resulted in the present charges. *See id*. at 59-64. Poole utilized force and the threat of force to coerce A.P. into performing sex acts on him, including yelling at A.P., demanding she perform sexual acts or face physical harm, and grabbing A.P.'s body and pulling her by her hair to the edge of the bed to perform sexual acts. *See id*. Additionally, on at least fifteen occasions, Poole digitally penetrated A.P. and forced A.P. to "touch him." *See id*. at 62. Poole also forced A.P. to perform non-consensual oral sex on him on at least two occasions. *See id*. at 60-61.

In addition to the testimony discussed above, the Commonwealth introduced the testimony of: A.P.'s first cousin, Am.P.; A.P.'s aunt and Am.P.'s mother, K.P.; Pennsylvania State Police ("PSP") Corporal Matthew Higgins ("Corporal Higgins"); Punxsutawney Borough Police Detective Brian Andrekovich ("Detective Andrekovich"); and Jo Ellen Bowman, an expert

_____

[3] A.P. had briefly lived with K.P. and G.P in 2016 as well. *See* N.T., 11/21/22, at 172-73.

witness in the dynamics of child sexual assault. *See* N.T., 11/21/22, 161, 170; *see also* N.T., 11/22/22, 35-36, 45, 55.

Poole testified at trial and denied all allegations of sexual abuse between him and his daughter. *See* N.T., 11/22/22, at 115, 121-22. Poole admitted to prior and ongoing alcohol abuse, which he believed contributed to an "argumentative" relationship with A.P. *See id*. at 101-02. Additionally, Poole testified their relationship was also impacted by arguments with A.P. about her lack of upkeep with laundry and other "petty stuff." *See id*. at 101-03. Finally, Poole believed A.P. would falsely accuse him of this conduct for monetary gain, as Poole received A.P.'s mother's Social Security checks on behalf of A.P. while he had custody of her. *See id*. at 120-21, 134.[4] Poole also presented testimony from his friend, Jill Eckman; Poole's girlfriend's daughter, Lexi Little; and Lexi's best friend, Tiffany Hart. Poole's witnesses testified to their observations of Poole's relationship with A.P. *See* N.T., 11/22/22, at 90, 149, 174. Each emphasized that Poole always did his best to care for A.P. and asserted that he would never sexually abuse A.P. *See id*.

Prior to trial, the Commonwealth filed a motion *in limine* seeking to admit evidence relating to prior sexual assaults of A.P. by Poole, specifically, the sexual assaults that occurred in Florida when A.P. was eight and twelve years old. *See* Commonwealth's Motion *in Limine*, 11/7/22. Following

---

[4] A.P.'s legal guardian received Social Security checks on her behalf until she achieved independent status.

argument on the motion, the trial court granted the Commonwealth's request, and the jury heard the testimony summarized above. *See* N.T., 11/7/22, at 167; Order, 11/16/22.

At the conclusion of trial, the trial court instructed the jury that the prior bad acts evidence could not be used to prove Poole's propensity, but rather, could only be used to prove a common plan, scheme, or design to have sexual illicit relations with A.P.. *See* N.T., 11/22/22, at 277-78. The Court instructed, in relevant part:

> Remember evidence of other crimes, wrongs, or bad acts is not [admissible] to prove the character of a person. Even if you find evidence regarding the uncharged incidents credible, you can't conclude [Poole is] guilty based solely on your decision that he and the alleged victim had sexual encounters at other times and other jurisdictions. Its only allowable purpose is to help you decide whether [Poole] was engaging in a continuing course of conduct during the timespan charged by the Commonwealth. Remember too, the evidence of uncharged conduct is not even relevant unless you conclude that it and the charged conduct are so similar as to show a common scheme, plan, or design. Otherwise, you must completely disregard that testimony as you decide whether [Poole] committed other offenses for which he is now on trial.

*Id*. at 278.

The jury convicted Poole of two counts of rape by forcible compulsion, as stated above; and, *inter alia*, fifteen counts of aggravated indecent assault.[5] Prior to sentencing, Poole was evaluated by the Sexual Offenders Assessment Board and was determined to be a Sexually Violent Predator. ***See***

---

[5] ***See*** 18 Pa.C.S.A. §§ 3121(a)(1), 3125(a)(1).

Order, 5/15/23. At the sentencing hearing, the trial court sentenced Poole to an aggregate sentence of ninety to one-hundred-eighty years of incarceration. *See* Sentencing Order, 5/15/23. Poole filed a post-sentence motion, which the trial court denied. Poole timely appealed following the denial of his post-sentence motion.

Poole raises the following issue for our review:

Whether the lower court erred in permitting [the Commonwealth] to elicit testimony related to alleged sexual acts that were never charged against [Poole]?

Poole's Brief at 4 (unnecessary capitalization omitted).

Our standard of review for evidentiary rulings is as follows: Evidence is within the sound discretion of the trial court and must not be disturbed absent an abuse of discretion. *See Commonwealth v. Hicks*, 156 A.3d 1114, 1125 (Pa. 2017). An abuse of discretion is not merely an error of judgment, but rather the overriding or misapplication of the law or an exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record. *See Commonwealth v. Dent*, 837 A.2d 571, 577 (Pa. Super. 2003). An abuse of discretion determination regarding an evidentiary ruling "may not be made merely because an appellate court might have reached a different conclusion . . .." *See Commonwealth v. Hoover*, 107 A.3d 723, 729 (Pa. 2014).

In his sole appellate issue, Poole argues that the trial court erred in allowing A.P. to testify to the incidents of sexual abuse that occurred in Florida, when A.P. was 8 and 12, and prior to the charged offenses.

Generally, evidence of other wrongful conduct not presently charged in the criminal information is inadmissible at trial unless an exception applies. *See Commonwealth v. Kramer*, 566 A.2d 882, 884 (Pa. Super. 1989). This rule is codified in Pennsylvania Rule of Evidence 404(b), which states in relevant part:

> **(b) Other Crimes, Wrongs, or Acts**.
>
> (1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.
>
> * * * *

Pa.R.E. 404(b).

Prior to the adoption of Rule 404(b), our Supreme Court carved out an exception to the prohibition on admission of prior bad acts which permits the introduction of evidence of prior bad acts in cases involving incest. *See Commonwealth v. Bell*, 31 A. 123 (Pa. 1895); *see also Commonwealth v. Knowles*, 637 A.2d 331, 333 (Pa. Super. 1994). Pursuant to *Bell*—and as applied by this Court in *Knowles*—in sexual assault cases involving incest,

evidence of prior sexual relations between a defendant and his or her victim is admissible to show a passion for illicit sexual relations with the victim. *See Bell*, 31 A. at 124; *Knowles*, 637 A.2d at 334; *Kramer*, 566 A.2d at 884. This exception applies when the prior acts involve the same victim, and the two acts are sufficiently connected to suggest a "passion," or "design," for illicit sexual contact with the victim. *See Knowles*, 637 A.2d at 334. The evidence is admissible only when the prior act involves the same victim and the two acts are sufficiently connected to suggest a continuing course of conduct. The admissibility of the evidence is not affected by the fact that the prior incidents occurred outside of the statute of limitations. *Id*. at 333. This "lustful disposition" exception to the general rule against the admission of evidence of prior or subsequent bad acts has been consistently recognized by our Supreme Court for more than a century. *Commonwealth v. Royster*, 256 A.3d 22, 2021 WL 1907162 (Pa. Super. 2021) (unpublished memorandum at *16).[6]

In *Knowles*, for example, the Commonwealth introduced the following evidence of Knowles's prior bad acts over defense objections: The victim testified that at age seven or eight, she stayed with Knowles, her step-

---

[6] *See* Pa.R.A.P. 126(b) (non-precedential decisions filed by this Court after May 1, 2019 are citable for their persuasive value). We note *Royster* was decided by a three-judge panel that included two members of the panel for the case *sub judice*.

grandfather, in Texas for a week. *See id*. at 333. The victim testified that Knowles asked her to come into his bedroom and give him a goodnight kiss. *See id*. During the interaction, Knowles was undressed and proceeded to remove the victim's pajamas and have sexual intercourse with her. *See id*. Additionally, Knowles had the victim fellate him and this conduct was then repeated for the next five nights. *See id*. at 333. The charges at issue at trial and on appeal arose from the following: Five to seven years later, the victim stayed with Knowles over the holidays in Pennsylvania. *See id*. *a*t 332. While alone, Knowles digitally penetrated the victim with his fingers. *See id*. The following spring, Knowles digitally penetrated the victim again in the same manner and fondled her breasts. *See id*. This Court concluded testimony of Knowles's prior bad acts was admissible because the conduct did not involve a single isolated act and the evidence was relevant to show that Knowles had a "design," *i.e.*, a continuing passion for illicit sexual contact with his step-granddaughter. *See id*.

 *Knowles* was decided in 1994 and predates the adoption of Rule of Evidence 404 in 1998. *See Commonwealth v. Wattley*, 880 A.2d 682, 688 (Pa. Super. 2005) (McEwen, P.J.E., dissenting). However, a panel of this Court in a published majority decision rejected the argument that Rule 404(b) invalidated *Bell* and *Knowles*. *See Wattley*, 880 A.2d at 686 n.6. Thus, the adoption of Rule 404 does not supersede *Knowles*.

Here, Poole argues the trial court erred when it allowed the victim to testify to the following prior instances of sexual abuse. *See* Poole's brief at 4. Crucially, Poole does not contest that *Knowles* is still good law, but, rather, he asserts that it is distinguishable. *See id*. at 7. The trial court below opined that the prior bad acts evidence was admissible pursuant to *Knowles* because, *inter alia*, "[a]s was the case in *Knowles*, [Poole] had limited access to his victim but, after long periods of separation, resumed the illicit contact conduct once he was physically able to do so." Trial Court Opinion, 10/2/23. Following our review, we conclude the evidence was properly admitted pursuant to *Knowles* and/or under 404(b)'s common, plan, scheme, design exception.

Here, A.P. testified that Poole sexually abused her multiple times while she was in Florida. *See* N.T., 11/21/22, at 42, 47. Additionally, like in *Knowles*, the lapse in time between the prior conduct and the present charges is not dispositive here. Poole had sporadic physical access to A.P. during visitation when she was eight years old, and he began to sexually abuse her at age eight, though he would "disappear" after these few visitation weekends. *See id*. at 45; *see also* N.T., 11/22/22, at 7-9. Shortly after A.P.'s mother passed away in 2015, A.P. briefly lived with S.P. before Poole gained custody of her. *See* N.T., 11/22/22, at 9-10. A.P. was twelve at this time, and this is when Poole again began to abuse her. *See* N.T., 11/21/22, at 35, 47-50. Poole was unable to exercise custody over A.P. from 2018 into

- 10 -

2020. Once released, Poole regained custody and began to sexually abuse A.P again. *See id*. at 54-63. Considering Poole's length of incarceration, it is evident that the incarceration is what prevented continued sexual abuse, and each time he had physical access to A.P., he sexually abused her.

Furthermore, evidence of prior conduct need not be precisely the same conduct as the conduct giving rise to the criminal charges, it is enough that a reasonable inference can be drawn to show a passion for illicit sexual relations with the particular victim. *See Knowles*, 637 A.2d at 334. Poole's prior conduct included digital penetration of A.P. when she was eight and forced penile penetration when A.P. was twelve. *See* N.T., 11/21/22, at 43-45, 47-49. Poole's present conduct included, among other things, forcible oral sex, digital penetration, and he would force A.P. to "touch him." *See* N.T., 11/21/22, at 60-63. Because identical conduct is not required under the exception, Poole's prior and present conduct is similar enough that a reasonable inference could be drawn that Poole had a passion or propensity for illicit sexual relations with his daughter, A.P.

Accordingly, we hold that the evidence was properly admitted pursuant to *Knowles*. *See also Commonwealth v. Adams-Smith*, 209 A.3d 1011, 1020 (Pa. Super. 2019) (holding that "[o]ne such exception [to the prohibition on prior bad acts evidence] arises in the prosecution of sexual offenses. Evidence of prior sexual relations between defendant and his . . . victim is admissible to show a passion or propensity for illicit sexual relations with the

victim"), *vacated on other grounds*, 238 A.3d 337 (Pa. 2020); ***Commonwealth v. Young***, 989 A.2d 920, 926-27 (Pa. Super. 2010) (holding that evidence of prior sexual abuse of the same victim by the defendant was properly "admitted solely to demonstrate a passion . . .[of] appellant for illicit sexual relations with this particular victim, [but] must not be considered as evidence that appellant was of bad character or had tendencies from which guilt might be inferred instantly"); ***Commonwealth v. Snyder***, 870 A.2d 336, 344 (Pa. Super. 2005).

Additionally, we note the trial court instructed the jury that the prior bad acts evidence could not be used to prove Poole's propensity, but rather, could only be used, consistent with Rule 404(b), to prove a common plan, scheme, or design to have sexual illicit relations with the victim. ***See*** N.T., 11/23/22, at 277-78. The trial court's jury instruction is consistent with the Pennsylvania Suggested Standard Criminal Jury Instructions on this point, which provide:

> 1. You have heard evidence tending to prove that the defendant was involved in [[[[[[an offense] [improper conduct] for which [he] [she] is not on trial. I am speaking of the testimony to the effect that *[explain testimony]*.
>
> 2. This evidence is before you for a limited purpose, that is, for the purpose of tending to [show *[give specifics]*] [contradict *[give specifics]*] [rebut *[[[[[[give specifics]*] *[give specifics]*. This evidence must not be considered by you in any way other than for the purpose I just stated. You must not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt.

Pa. SSJI (Crim), §3.08. Specifically, and as noted above, the court instructed the jury that the prior bad acts at issue here were uncharged, Poole was not

on trial for them, and they could not be used to prove Poole's character. This Court has noted that when prior bad acts evidence is admitted, this jury instruction is proper. ***See***, ***e.g.***, ***Commonwealth v. Lockcuff***, 813 A.2d 857, 860 (Pa. Super. 2002) (noting that when 404(b) evidence is admitted, "the trial judge instructs the jury on its limited purpose," and citing to section 3.08). Additionally, this instruction may be given as part of the general jury charge. ***See Commonwealth v. Webb***, 236 A.3d 1170, 1179 (Pa. Super. 2020). The law is well settled that jurors are presumed to follow the court's instructions. ***See Commonwealth v. Bullock***, 913 A.2d 207, 218 (Pa. 2006).

For the foregoing reasons, Poole is due no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 11/14/2025

- 13 -